UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
JASMINE BRIDGEFORTH, DELANO      :
BROADUS, and DAVID FAIRFAX,         :
                                           :
             Plaintiffs,           :        FIRST AMENDED COMPLAINT
                                           :
             -against-            :
                                           :
CITY OF NEW YORK, NYPD Officer JOHN   :      <u>Jury Trial Demanded</u>
ZERAFA, Tax No. 919893, individually, NYPD  :     No. 16 Civ. 273 (WHP)
Officer RAFAEL SANCHEZ, Shield No. 12327,  :
individually, NYPD  Officer MOHAMMED     :
KHANG, Shield No. 18729, individually, NYPD :
Sergeant DEMETRIOUS LEE, Shield No. 3087,  :
individually, NYPD Deputy Inspector LUIS    :
DESPAIGNE, individually, and JOHN/JANE    :
DOE POLICE OFFICERS 1-5, individually,     :
                                           :
             Defendants.        :
                                         :
-------------------------------------------------------- x

       This is an action to recover money damages arising out of the violation of Plaintiff

Jasmine Bridgeforth's, Delano Broadus's and David Fairfax's rights under the Fourth and

Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

      1.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth

and Fourteenth Amendments to the United States Constitution.

      2.      The Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343.

      3.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)

as Plaintiffs reside in the District and the claim arose in the District.

## JURY DEMAND

      4.      Plaintiffs respectfully demand a trial by jury of all issues in the matter pursuant to

Federal Rule of Civil Procedure ("FRCP") 38.

**PARTIES**

5.      All Plaintiffs are residents of the City, County and State of New York.

6.      Defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

7.      Defendant CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the City of New York.

8.      That at all times hereinafter mentioned, NYPD Officer JOHN ZERAFA, Tax No. 919893, individually, NYPD Officer RAFAEL SANCHEZ, Shield No. 12327, individually, NYPD  Officer MOHAMMED KHANG, Shield No. 18729, individually, NYPD Sergeant DEMETRIOUS LEE, Shield No. 3087, individually, NYPD Deputy Inspector LUIS DESPAIGNE, individually, and JOHN/JANE DOE POLICE OFFICERS 1-5, individually, were duly sworn police officers of the NYPD and were acting under the supervision of said departments and according to their official duties.

9.      That at all times hereinafter mentioned the Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

10.     Each and all of the acts of the Individual Defendants alleged herein were committed by said Defendants while acting within the scope of their employment by Defendant City of New York.

## **FACTS**

11.    On or about Friday, October 9, 2014, Ms. Bridgeforth and Mr. Broadus were at their home at 1430 Amsterdam Avenue, New York, NY 10027 ("the Apartment") with their then-three-year-old daughter F.B.

12.    In addition, their friends Eric Kirkland, Sarah Hau-Sans and David Fairfax were at the Apartment that day.

13.    Mr. Broadus cooked dinner for the group, then Mr. Kirkland, Ms. Pozos and Mr. Fairfax planned to watch F.B. once Ms. Bridgeforth and Mr. Broadus left the Apartment to go to work.

14.    Mr. Broadus made dinner for the group.

15.    One of Ms. Bridgeforth's and Mr. Broadus's neighbors, Necola Fowler, came and went from the Apartment throughout the day and also partook in the food.  There was no particular invitation for Ms. Fowler, she just came in and out as Ms. Bridgeforth and Mr. Broadus already had other guests.

16.    After dinner, Ms. Fowler left for the last time before the incident.

17.    Ms. Bridgeforth and Mr. Broadus left for work.

18.    Mr. Kirkland, Ms. Pozos and Mr. Fisher stayed in the Apartment to watch F.B.

19.    Ms. Fowler, who had become upset at something over the visit for dinner and who had been drinking over the course of the day, called 911 and falsely reported to NYPD officers that Ms. Bridgeforth and Mr. Broadus had abducted her and a teenaged girl named Gloria and had had them both shackled to a radiator in the Apartment earlier that day.  According to Ms. Fowler, Gloria was shackled to the radiator naked and crying when Ms. Fowler last saw her in the Apartment prior to Ms. Fowler's escape.

3

20.     According to Ms. Fowler, Ms. Bridgeforth and Mr. Broadus were sex traffickers who intended to sell Gloria on Craigslist.

21.     None of this was true and Gloria does not exist.

22.     Defendant Zerafa, Defendant Sanchez and Defendant Khang responded to Ms. Fowler's report and spoke to her further.  During that conversation, Ms. Fowler's presentation was such that a reasonable person would have readily perceived that Ms. Fowler was unwell and perhaps under the influence of some substance.

23.     In response to Ms. Fowler's report, Individual Defendants knocked on the Apartment door without a search warrant to investigate ("the First Visit").  On information and belief, Defendant Zerafa, Defendant Sanchez, Defendant Khang were among this group of Individual Defendants involved in the First Visit ("First Visit Defendants").  On information and belief, Defendant Lee was the on-site supervisor for Individual Defendants during the First Visit and subsequent events.

24.     On information and belief, Mr. Kirkland and Ms. Hau-Sans opened the door and allowed the First Visit Defendants to look around.

25.     On information and belief, the First Visit Defendants entered the Apartment and looked around, encountering nothing of note during the First Visit.  There was no Gloria chained to the radiator and in fact no one named Gloria at all.  Mr. Kirkland and Ms. Hau-Sans were alone in the Apartment with F.B. during the First Visit Defendants' look around.  Mr. Fairfax had left for a spell and Ms. Bridgeforth and Mr. Broadus, as stated above, were at work.

26.     The First Visit Defendants did not arrest Mr. Kirkland or Ms. Hau-Sans during the First Visit.  The First Visit Defendants simply left the Apartment as they had not found anything that could reasonably be described as relevant to Ms. Fowler's sex-trafficking accusation.

4

27.     On information and belief, after the First Visit, Defendant Zerafa made material false statements on a search warrant application he then submitted to a magistrate.  For example, on information and belief, Defendant Zerafa falsely reported on the affidavit that during the First Visit he had seen that Ms. Bridgeforth and Mr. Broadus had installed special locks, bars and motion sensors on the Apartment windows which suggested the imprisonment of sex trafficking victims.  This was not true.

28.     On information and belief, Defendant Zerafa intentionally, deliberately, recklessly and/or unreasonably fabricated and/or exaggerated still other material facts in the affidavit about his observations during the First Visit knowing that this incorrect characterization of the circumstances would induce a magistrate into thinking that there was sufficient probable cause to issue a search warrant for the Apartment relating to sex trafficking offenses when there was not.

29.     In addition, on information and belief, Defendant Zerafa failed to include in the affidavit appropriate mention of Ms. Fowler's condition and/or the fact that the First Visit failed to corroborate Ms. Fowler's report about the naked girl named "Gloria" chained to the radiator. It was not reasonable to believe that Ms. Fowler was a reliable and truthful witness yet Defendant Zerafa presented her as such.

30.     Defendant Zerafa submitted the above-described search warrant affidavit and accompanying application to a magistrate.  On information and belief, the magistrate issued the requested search warrant in reliance upon those documents.

31.     Now operating under the authority of the ill-gotten search warrant, Defendant Zerafa, Defendant Sanchez, Defendant Khang, Defendant Despaigne and Defendant John/Jane Does 1-5 returned to the Apartment and conducted the Search/Second Visit ("Search Execution Defendants").

32.     On information and belief, Mr. Fairfax had still not returned to the Apartment when the Search/Second Visit occurred.  Instead, Mr. Kirkland and Ms. Hau-Sans were there alone with F.B., as Ms. Bridgeforth and Mr. Broadus were still at work.

33.     Search Execution Defendants searched the Apartment and again found no evidence of the fictional Gloria, evidence that Ms. Bridgeforth and Mr. Broadus had very recently had two people chained to their radiator and/or any other evidence that supported Ms. Fowler's accusations in any respect.

34.     During the Search Execution Defendants' Search/Second Visit, they seized three of Ms. Bridgeforth's wigs and two sets of keys which they unreasonably perceived to be evidence of sex trafficking.  Search Execution Defendants also seized a laptop computer and cellular telephones and more from the Apartment.  (Incidentally, these electronic devices were later searched, were clean, and were returned to Bridgeforth after nearly one year.)

35.     Defendant Zerafa, Defendant Sanchez and Defendant Khang arrested Mr. Kirkland and Ms. Hau-Sans and placed F.B. in ACS custody.

36.     Defendant Lee continued in his on-site supervisory capacity during these and subsequent arrests and, knowing the herein described facts regarding the merits and demerits of the case, unreasonably approved the validity of the arrests on site.

37.     At about this time, Mr. Fairfax returned to the Apartment.

38.     Defendant Zerafa, Defendant Sanchez and Defendant Khang arrested Mr. Fairfax.

39.     When Ms. Bridgeforth and Mr. Broadus returned from work, Defendant Zerafa, Defenadnt Sanchez and Defendant Khang arrested Mr. Broadus for offenses including sex trafficking, assault and endangering F.B.'s welfare and Ms. Bridgeforth for endangering F.B.'s welfare.

40.     Ms. Bridgeforth, Mr. Broadus and Mr. Fairfax were incarcerated for roughly one and a half days pending arraignment.

41.     On information and belief, Defendant Zerafa and Defendant Sanchez falsely reported to employees of the District Attorney's Office that they had seen evidence of Gloria's captivity such as chains hanging from the wall.

42.     The District Attorney's Office declined to prosecute Ms. Bridgeforth, Mr. Broadus and Mr. Fairfax and all three Plaintiffs were released without seeing a judge.

43.     With respect to Mr. Fairfax, Defendants claim that an intervening cause for his arrest arose subsequent to what Mr. Fairfax alleges was his wrongful arrest for sex trafficking and kidnapping.  On information and belief, Defendants did not begin to suspect that intervening cause for some time after Mr. Fairfax's arrest and even when they did begin to suspect that intervening cause, they did not formulate probable cause for an even longer period of time.  Mr. Fairfax never saw a judge regarding this alleged intervening cause, either.

44.     On information and belief, Defendant Zerafa and Defendant Sanchez falsely reported to ACS that they had seen evidence of sex trafficking in the Apartment such as chains hanging from the wall such that ACS opened a neglect proceeding against Bridgeforth and Broadus relative to F.B. which had wide ranging and long lasting consequences for the family, including a deprivation of familial togetherness.

45.     On information and belief, the District Attorney's Office also declined to prosecute Mr. Kirkland and Ms. Pozos and they were released.

46.     As a consequence of Defendant Zerafa's, Defendant Sanchez's and the other Individual Defendants' unconstitutional actions, Ms. Bridgeforth, Mr. Broadus and Mr. Fairfax suffered damages including, but not limited to, deprivation of liberty, reputational damage, emotional trauma, a deprivation of familial togetherness and more.

7

47.     All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employees, and due to a custom, policy and/or practice of: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting those individuals.

48.     The aforesaid incident is not an isolated incident.  The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct as documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York as well as in New York State courts.  As a result, Defendant City of New York is aware (from said lawsuits as well as notices of claims and complaints filed with the NYPD's Internal Affairs Bureau and the CCRB) that many NYPD officers, including the Individual Defendants, arrest individual persons in order to meet productivity goals and arrest quotas; arrest individuals for professional advancement, overtime compensation and/or other objectives outside the ends of justice; and/or falsely arrest individuals and engage in a practice of falsification of evidence in an attempt to justify the false arrest.

49.     The Honorable Jack B. Weinstein, United States District Judge for the Eastern District of New York, has written that

> [i]nformal inquiry by the [C]ourt and among judges of this [C]ourt, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the [NYPD] . . . [T]here is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the [C]ity approving illegal conduct of the kind now charged.

8

Colon v. City of N.Y., No. 09 Civ. 8 & 9 (JBW), 2009 WL 4263363, at *2 (E.D.N.Y. Nov. 25, 2009).

50.     Former Deputy Commissioner Paul J. Browne, as reported in the press on January 20, 2006, stated that NYPD commanders are permitted to set "productivity goals," permitting an inference of such a custom or policy encouraging deprivations of individuals' constitutional rights in cases such as this one.

51.     Defendant City of New York is thus aware that its improper training and customs and policies have often resulted in a deprivation of individuals' constitutional rights.  Despite such notice, Defendant City of New York has failed to take corrective action.  This failure caused Individual Defendants in this case to violate Plaintiffs' constitutional rights.

52.     Moreover, on information and belief, Defendant City of New York was aware, prior to the incident, that the Individual Defendants lacked the objectivity, temperament, maturity, discretion and disposition to be employed as police officers.  Despite such notice, Defendant City of New York has retained these officers, and failed to adequately train and supervise them.

53.     All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

54.     All of the aforementioned acts deprived Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.

55.     The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers with the entire actual and/or apparent authority attendant thereto.

56.     The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as officers, pursuant to the customs, usages, practices, procedures and the rules of the Defendant City of New York, the NYPD, all under the supervision of ranking officers of said department.

57.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

58.     As a result of the foregoing, Plaintiffs are entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## FIRST CLAIM
## 42 U.S.C. § 1983

59.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

60.     Defendants, by their conduct toward Plaintiffs alleged herein, violated Plaintiffs' rights guaranteed by 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the Constitution of the United States.

61.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

62.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## SECOND CLAIM
## FALSE ARREST AND FABRICATION OF EVIDENCE

63.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

64.     Defendants violated the Fourth, Sixth and Fourteenth Amendments because they arrested and/or detained Plaintiffs without probable cause.

65.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their  constitutional rights.

66.     As a direct and proximate result of Defendants' unlawful conduct, Ms. Plaintiffs sustained the damages hereinbefore alleged.

## THIRD CLAIM
## UNREASONABLE SEARCH

67.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

68.     Defendants violated the Fourth and Fourteenth Amendments because they searched Plaintiffs' Apartment and their persons without probable cause as described herein.

69.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their  constitutional rights.

70.     As a direct and proximate result of Defendants' unlawful conduct, Ms. Plaintiffs sustained the damages hereinbefore alleged including, but not limited to, property damage.

## FOURTH CLAIM
## FAILURE TO INTERVENE

71.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

11

72.     The Individual Defendants actively participated in the aforementioned unlawful conduct and observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

73.     Accordingly, the Individual Defendants who failed to intervene violated the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

74.     Individual Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

75.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## FOURTH CLAIM
## MONELL

76.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

77.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

78.     The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to, the inadequate screening, hiring, retaining, training and supervising of its employees that was the moving force behind the violation of Plaintiffs' rights as described herein.  As a result of the failure of the Defendant City of New York to properly recruit, screen, train, discipline and supervise its officers, including the Individual Defendants, Defendant City of New York has tacitly authorized, and has been deliberately indifferent to, the acts and conduct complained of herein.

12

79.     The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

80.     The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City of New York and the NYPD constituted deliberate indifference to Plaintiffs' safety, well-being and constitutional rights.

81.     The foregoing customs, polices, usages, practices, procedures and rules of Defendant City of New York and the NYPD were the direct and proximate cause of the constitutional violations suffered by Plaintiffs as described herein.

**PRAYER FOR RELIEF WHEREFORE**, Plaintiffs respectfully request the following relief:

A. An order entering judgment for Plaintiffs against Defendants on each of their claims for relief;

B. Awards to Plaintiffs for compensatory damages against all Defendants, jointly and severally, for their violation of Plaintiffs' Fourth, Fifth, Sixth and Fourteenth Amendment rights, the amount to be determined at jury trial, which Plaintiffs respectfully demands pursuant to FRCP 38;

C. Awards to Plaintiffs of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to Plaintiffs' constitutional rights and welfare, the amount to be determined at jury trial, which Plaintiffs respectfully demands pursuant to FRCP 38;

D. Awards to Plaintiffs of the costs and reasonable attorney's fees arising from this action.

DATED:     April 29, 2016
             New York, New York

                                 /s
                                Ryan Lozar  (RL0229)
                                305 Broadway, 10th Floor
                                New York, New York 10007
                                (310) 867-1562

                                *Attorney for Plaintiffs*