UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

JASMINE BRIDGEFORTH, et al.,

                            Plaintiffs,

        -against-

CITY OF NEW YORK, et al., Defendants.

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDERS TO PRODUCE**

No. 16 Civ. 273 (WHP)

------------------------------------------------------------- x

In this Section 1983 litigation, Plaintiffs Jasmine Bridgeforth, Delano Broadus and David Fairfax allege that Defendants falsely arrested them on October 9, 2014; aggravated that initial constitutional violation by detaining them for an excessive amount of time; unlawfully searched Ms. Bridgeforth's apartment; and more. Plaintiffs submit this memorandum in support of their motion for Court Orders directing various records custodians to Produce: (1) the search warrant records; (2) the New York County District Attorney's Office file; and (3) the Family Court transcripts and records. The Parties have conferred and Plaintiffs' Counsel has made efforts to obtain some of these records without seeking the Court's intervention.

1

**Factual Background**

This summary is drawn from Plaintiffs' Complaint and the evidentiary record. To the extent the summary relies on items in the record, it cites to Exhibits that are appended to a declaration filed by Plaintiff's Counsel Ryan Lozar in connection with this motion ("Lozar Decl.").

On September 12, 2014, Ms. Bridgeforth and her three-year-old daughter F.B. moved into a new apartment at 1430 Amsterdam Avenue, Apartment 3C, in Manhattan ("Apartment 3C"). Lozar Decl., Exh. 1. Among the ways in which Ms. Bridgeforth prepared to move into her new home was to ask NYCHA to install window guards for F.B.'s safety, which it did. Lozar Decl., Exh. 2. The window guards were required under New York City law. Lozar Decl., Exhs. 3-4.

On October 9, 2014, in the middle of the night, a female complainant named Necola reported to police that she had just escaped captivity in Apartment 3C. Necola further reported, in sum and substance, that Plaintiffs had handcuffed her and a nude teenager named Gloria to a radiator inside Apartment 3C; that Plaintiffs took naked photographs of Necola and Gloria and posted them to Craigslist in ads for prostitution services; and that Plaintiffs obligated Necola and Gloria to use a bucket when they had to go to the bathroom. Finally, Necola reported that Plaintiff Delano Broadus had hit her.

2

One officer on the scene—Defendant Officer Demetrious Lee—indicated in his notes that Necola reported being in chains (as opposed to handcuffs) and that she appeared intoxicated but clear with her story. Lozar Decl., Exh. 5.

Regardless of how clearly Necola was able to tell the outlandish story to one person or another, its actual clarity dissipated shortly thereafter when Defendants performed a related "wellness check" at Apartment 3C, and found nothing that would corroborate Necola's serious, unusual and specific allegations. They found no trace of Gloria, no handcuffs and no bucket. All they found were two sleepy people named Sarah and Erik babysitting F.B. At the time, Ms. Bridgeforth and Mr. Broadus were at work (they earned their living collecting great volumes of cans by night, which they then recycled for cash). A fifth adult—Mr. Fairfax—was not at Apartment 3C when the wellness check took place, but he arrived shortly thereafter.

Despite the absence of any evidence to reasonably corroborate Necola's sex trafficking allegations, Defendants seized F.B. and took her to the hospital for examination and arrested Sarah and Erik. Later, when Mr. Fairfax arrived at Apartment 3C, Defendants arrested him, too. Hours later, at around 8:00 a.m., when Ms. Bridgeforth and Mr. Broadus returned to Apartment 3C from work, Defendants arrested them, too.

On October 9, 2014, when Defendant NYPD Officer Sanchez notified ACS CPS Joshua Davis what had happened, he reported "chains hanging from the wall" in Apartment 3C. Lozar Decl., Exh. 6. This was not true, and Defendants' own photographs of Apartment 3C show this not to be true. Officer Sanchez also referred to locks on the windows, which Defendants' own photographs showed to be nothing more than the Window Guards that are required by City law for families with small children.

In addition, another NYPD Officer on the scene, Kelly Rourke, reported to ACS CPS Emmanuel Okon that when police entered Apartment 3C, "they found a woman handcuffed to a radiator in a provocative cloth [sic]." Lozar Decl., Exh. 7. This was not true and Defendants do not claim to have found any such woman who, had she been found, would presumably have been the fictional teen that Necola named Gloria.

Meanwhile, Defendant Detective John Zerafa applied for and obtained a search warrant for Apartment 3C. Lozar Decl., Exh. 8. In issuing the warrant to Detective Zerafa, the court stated that he had proved that there was reasonable cause to believe that police would find items in Apartment 3C that included, but were not limited to, handcuffs, chains, ropes, knives, and sex toys. Id. On information and belief, Detective Zerafa's search warrant application is a "sworn, detailed, written statement . . . asserting that certain facts exist that the applicant

believes establish probable cause that the place to be searched contains particular contraband or evidence." Lozar Decl., Exh. 9. New York Criminal Procedure Law Section 690.36 also permits applications for search warrants to be made orally, in which case the "oath or oaths and all of the remaining communication must be recorded, either by means of a voice recording device or verbatim stenographic or verbatim longhand notes." N.Y. C.P.L. § 690.36(3). In any one of these circumstances, the minutes of the oral application are filed with the court within twenty-four hours of the warrant's issuance. Id.

On October 9, 2014, Defendants took about thirty minutes (9:45 p.m. until 10:15 p.m.) to execute the search warrant at Apartment 3C. Lozar Decl., Exh. 10. Defendants did not find handcuffs, chains, ropes, knives or sex toys. Instead, Defendants seized two wigs, a set of keys, a note about the location of a hotel, a laptop and three cellular telephones as possible evidence of the alleged sex trafficking. They took fourteen photographs.

Approximately fourteen hours later (and with Plaintiffs each nearing thirty-five to forty hours of incarceration altogether), the New York County District Attorney's Office declined to prosecute Plaintiffs, and they were released. Lozar Decl., Exh. 11. It should be noted, for completeness, that the police also pursued a contempt charge against Mr. Fairfax for violating a court stay-away order from

Sarah, but the D.A.'s Office indicated that it declined to prosecute because the police never saw Mr. Fairfax with Sarah and there was no evidence to that effect. As for the sex trafficking allegations leveled against Plaintiffs, the D.A.'s Office indicated that it would require further investigation before it would consider prosecuting. Id. There is no indication that Defendants conducted any further investigation in an effort to help "Gloria." Lozar Decl., Exhs. 10, 12.

## Plaintiff Requests A Court Order Directing The Production Of Search Warrant Application Materials

In light of the foregoing, Plaintiffs respectfully request that the Court order the New York County District Attorney's Office, the New York County Criminal Court and/or the New York City Police Department to produce any and all records relating to the October 9, 2014, search warrant for 1430 Amsterdam Avenue, Apartment 3C, to Ryan Lozar, counsel for Plaintiffs in this case, and/or Rhiana Swartz, counsel for Defendants. A Proposed Order is attached.

The search warrant records that are the subject of this Order include, but are not limited to, any sworn or unsworn statement that Defendant Detective Zerafa, the complaining witness and/or other individual made to the Criminal Court that issued Search Warrant 1066-2014, and any and all minutes relating to the warrant's issuance (for example, if there was oral testimony from Detective Zerafa, a

complaining witness and/or other individual given in support of the application which was recorded by a stenographer).

Although Plaintiffs request the opportunity to more fully brief their particularized need for the search warrant records in the event that any subject of the Proposed Order objects, Plaintiffs preliminarily argue that they are able to show a particularized need for the search warrant records pursuant to the factors set forth in Brown v. City of New York, No. 06 Civ. 2059 (LTS) (KNF), 2007 WL 415080, at *1 (S.D.N.Y. Jan. 30, 2007).

First, the search warrant records are needed to avoid a possible injustice. Plaintiffs' record already shows that Necola reported a facially outlandish story to Defendants while appearing intoxicated; that Defendants' wellness check revealed no corroborating evidence and in fact only served to further undermine the story's credibility; that Defendants then reported at least to ACS that chains were hanging from the walls of Apartment 3C and that police found a woman handcuffed to a radiator inside; that Defendants regardless arrested Plaintiffs; and more.

It is thus natural that Plaintiffs would find the statements that Defendant Detective Zerafa and others made to the magistrate who issued the search warrant to be necessary to avoid possible injustice. The injustice would be depriving Plaintiffs of the ability to further test their unlawful search and false arrest claims.

Next, the need for disclosure of the search warrant records is greater than the need for secrecy. Here, the execution of the search warrant confirmed what Defendants should have already reasonably concluded from Necola's intoxication, the nature of her allegations, and the absence of evidence corroborating her story—i.e., that the charges against Plaintiffs were not true.

In light of the fact that the accusations that were the subject of the search warrant records have been so roundly debunked shows that keeping those records secret going forward would only serve to aggravate the significant damage already caused by Necola's patently false report while denying Plaintiffs the right to seek redress for their injuries. At the same time, whatever governmental interest broadly promotes secrecy in this context, it should apply with less force in cases where the complainant has been discredited.

Finally, the request is structured to cover only material so needed. In other circumstances, a civil rights plaintiff requesting such records might permit that a complainant's identity be redacted. Here, Necola's identity is already known to Plaintiffs such that there is no individual privacy interest at stake.

**New York County District Attorney's File**

Plaintiffs also respectfully request that the Court order the New York County District Attorney's Office to produce any and all records in its files relating to Plaintiffs' October 9, 2014, arrests, the suggested charges, investigation of the

claims against Plaintiffs, and the search of Apartment 3C. ADA Caitlin Nolan and a supervisor, ADA Silbery (f/n/u), are the relevant individuals at the DA's Office who would have such records or knowledge of their whereabouts. A Proposed Order is attached.

It should be noted that Defendants have produced, and Plaintiffs have obtained, very limited DA's Office records. The decline-to-prosecute letters that appear as Exhibit 11 to the Lozar Declaration constitute the entirety of this production. Lozar Decl., Exh. 11. Defense Counsel argues that these records are likely the only ones that exist. In sum and substance, Defense Counsel's argument is that insofar as the DA's Office declined to prosecute, it would not have any reason to possess relevant paperwork.

Plaintiffs disagree with Defendants' theory about the likelihood of DA's Office records, and belief that there must be many. Detective Zerafa worked with ADA Nolan on the search warrant application as shown by actual evidence but also as required by the NYPD Patrol Guide. Next, it is only logical to think that Defendants submitted documents to the DA's Office—statements, draft complaints, physical evidence, etc.—when Defendants proposed that the DA's Office bring charges against them. Finally, it stands to reason that insofar as ADA Nolan's decision not to prosecute was approved and/or guided by her supervisor

ADA Silbery, there were records that were reviewed in reaching that decision. These records may include such important items, for example, as 911 recordings and/or transcripts documenting the Necola call that initiated the incident described herein.[1]

**Family Court Transcripts And Records**

The incident gave rise to ACS proceedings. Defendants performed an emergency removal of F.B. from her parents' custody. Earlier in discovery, I obtained and produced Family Court transcripts of permanency hearings that occurred in late 2014. However, and for reasons unknown, I have been unable to obtain the very first Family Court hearing held on October 10, 2014, then a follow-up hearing on October 16, 2014, in the immediate aftermath of the incident. Although this is only speculation, Plaintiffs' difficulty in obtaining these records may have to do with the fact that there are three numeric file identifiers. The Docket Number is NN-45041-14. The CIN Number is EV34543R. And the Case Number is 5311897. Whatever the explanation, Plaintiffs hope that a Court Order

---

[1] Defense counsel alleges that these recordings and transcripts were deleted from NYPD servers long ago, and while that may be true, it is likely that critical records such as these would have been shared with the DA's Office, or produced to them upon request as they weighed whether to prosecute this peculiar case. Thus, they may be in a DA's Office file and are extremely relevant records that Plaintiffs would like to hear, read and/or potentially use at trial.

will prompt custodians to locate these critical transcripts where Plaintiff's Counsel's efforts alone have failed. A Proposed Order is attached.

To provide an indication of the value of these Family Court transcripts, the transcripts that I have been able to obtain contain sworn testimony from Defendant NYPD Officer Rafael Sanchez about the incident, and from ACS CPS Joshua Davis. At the very least it seems that ACS CPS Joshua Davis was present for and may have testified at the October 10, 2014, and October 16, 2014, emergency Family Court hearings held in the immediate aftermath of the incident.

According to ACS records, the October 10, 2014, Family Court hearing was held in New York Family Court before Judge Stewart Weinstein in Part 6. Next, the October 16, 2014, Family Court hearing was held before Judge Weinstein in Part 6 as well, again under the same case and neglect petition numbers.

## Conclusion

In light of the foregoing, Plaintiffs respectfully request that the Court issue the Proposed Orders to Produce: (1) the search warrant records; (2) the New York County District Attorney's Office file; and (3) the Family Court transcripts and records.

DATED:  November 8, 2016
        New York, New York

_/s/ Ryan Lozar_
Ryan Lozar
305 Broadway, 10th Floor
New York, New York 10007
(310) 867-1562

To:  ACC Rhiana Swartz, Esq. (by hand and ECF)
     Office of Corporation Counsel
     100 Church Street
     New York, NY 10007