The Law Office of Ryan Lozar, P.C.
305 Broadway, 10th Floor, New York, NY 10007
Tel: (310) 867-1562; Alternate Tel: (646) 666-8262; Fax (877) 666-4456
ryanlozar@gmail.com
www.ryanlozar.com/www.luchaportusderechos.com



# MEMO ENDORSED

November 18, 2016

Dear Judge Pauley:

I represent Plaintiffs in this Section 1983 action. This is the Parties' joint letter regarding Plaintiffs' discovery motions. The Parties have made substantial effort to resolve the issues outlined herein, including service of deficiency letters, supplemental discovery requests, requests to admit, requests to inspect, countless telephone calls and email exchanges, and more. These efforts have narrowed disputes substantially. Thus, this motion addresses only items that we have sincerely been unable to resolve without the Court's intervention.

## I. Whether The Court Should Compel Production Of Search Warrant And DA File Records

### Plaintiffs' position.

Plaintiffs request that the Court compel Defendants to produce the search warrant affidavit and related records, and DA's Office records in their possession as well.[1] The requested search warrant records may include, but are not limited to, a record of Defendants' and/or Nicole's (the woman who reported a sex trafficking operation in Apt 3C) statements to the DA's Office and/or court about the incident. For the purposes of Plaintiffs' arguments in this motion, Plaintiffs respectfully refer the Court to the fact summary filed with the Court on November 8, 2016. Docket No. 39 at 2.

Defendants have alleged that the only records the DA's Office has are one-page letters for each Plaintiff stating, in sum and substance, "decline to prosecute." Plaintiffs strenuously object that this can be true. First, Defendants interrogated Plaintiffs at great length and these statements surely would have been relayed to the DA's Office. Discovery shows this and Plaintiffs signed waivers of their Miranda rights. According to Plaintiffs, Defendants' interrogations attempted to "catch them" on such details as which of them was primarily responsible for cooking that evening's meatloaf, and which of them cooked that evening's mashed potatoes. It does not stand to reason that Defendants would sift through such minutiae for discrepancies without writing it down (this is to say nothing of Plaintiffs' statements on larger questions).

In addition, records are likely to exist because (1) Defendant Sanchez faxed records to the DA's Office's Early Case Assessment Bureau (ECAB); (2) Defendant Zerafa took Nicole to the DA's Office for an interview by prosecutors; and (3) ADA Nolan interviewed Defendant Sanchez for two hours. Finally, Plaintiffs are hopeful that many standard records which they have thus far been denied—the transcript/recording of the 911 call that Nicole made from a pay telephone directly in front of the apartment building's front entrance (this is important because, among other things, one of the Defendants reported that Nicole was notably intoxicated), the aided reports for Ms. Bridgeforth's daughter and Nicole, Defendants' scratch complaint and domestic incident reports, prisoner rosters, prisoner dispatches, prisoner movement slips, and more—will be in the DA's Office file.

---

[1] Plaintiffs will serve the New York County District Attorney's Office and file an affidavit of service on the docket so that that Office has an opportunity to respond to the motion at this stage in addition to later as a motion to quash. In addition, Defense Counsel has been in touch with a representative from that Office regarding production of documents and she has agreed to present that representative with a copy of this motion in order to further assure notice.

In Atwell v. City of New York, No. 07 Civ. 2365 (WHP), 2008 WL 5336690 (S.D.N.Y. Dec. 15, 2008), the Court weighed whether to unseal similar records in the context of a Section 1983 action. The Atwell Court held that a plaintiff seeking disclosure of privileged or protected materials must show a particularized need. Following the Atwell framework, Plaintiffs first argue that the requested records are not protected from disclosure by any applicable privilege or rule. On these facts, there is no perceptible law enforcement privilege, as Plaintiffs already know the identity of informant Nicole, no other informant is involved, the DA's Office declined to prosecute any of the Plaintiffs, Defendants completely closed their investigation, and more. As for state privacy rules, Plaintiffs have all signed releases waiving their privacy interests in the sealed records. See N.Y. C.P.L. § 160.50.

The next stage of Atwell review asks whether the records are needed to avoid possible injustice; whether the need for disclosure is greater than the need for secrecy; and the request is structured to cover only material so needed. See Atwell, 2008 WL 5336690, at *2. Plaintiffs claim that the records are needed to avoid possible injustice because they are extremely relevant to Plaintiffs claims, which allege that Defendants falsely arrested them and unlawfully searched Ms. Bridgeforth's apartment by knowingly misrepresenting facts relating to the incident and omitting material facts as well. As to the former point, the record shows that Defendants falsely stated to ACS that chains were hanging on the walls of Apartment 3C, yet Defendants' own photos of Apartment 3C belie this claim. As to the latter point, Defendants determined early on in their investigation through CCTV footage that Nicole intentionally "embellished [her allegations] by adding a fictitious female named Gloria to her encounter." Yet ACS records document an NYPD officer's statement that the first officers on the scene observed this fictional person chained to a radiator. Next, the need for disclosure is greater than the need for secrecy because, as discussed above, there is no need for secrecy because Plaintiffs already know the informant's identity and the investigation was closed in 2014. For the same reasons, Plaintiffs argue that their records request meets the prong of Atwell requiring that it be tailored: There is no privileged or protected information for Plaintiffs to carve out.

### Defendants' Position.

None of these documents are in defendants' possession, custody, or control. As defendants have informed plaintiff, all documents received from the DA's Office pursuant to our standard request have been produced and will continue to be produced on a rolling basis. On November 17-18, 2016, the DA's Office informed defendants that additional documents had been located and would be promptly produced. Defendants will produce those documents to plaintiffs within a reasonable time after receipt.

Regarding the search warrant affidavit, the DA's Office informed the parties that it is sealed. Defendants do not object to the affidavit being unsealed, but disagree that such action is warranted under the Atwell standard. Plaintiffs have not shown that they cannot get this information some other way; for example, by deposing Detective Zerafa, who signed the affidavit, and/or the complaining victim.[2]

For the record, defendants dispute the version of events set forth by plaintiffs in their November 8th memorandum of law, which they incorporate by reference above. Plaintiffs' version of events is rife with misrepresentations, particularly regarding facts about which plaintiffs have no personal knowledge. Notably, many of those facts do not cite to the record (despite the twelve exhibits), or do so dishonestly.

---

[2] Plaintiffs refer to the complaining victim throughout this letter as "Nicole," even though all documents produced thus far, as well as plaintiffs' own complaint, identify her as "Nicola."

For example, regarding the "chains hanging from the wall" and the "woman handcuffed to a radiator" hearsay statements, Officers Sanchez and Rourke reported what the complaining victim told them, and never claimed to have seen those things themselves. No NYPD paperwork attributes such observations to the officers. It should also be noted that certain documents annexed as exhibits to plaintiff's November 8th motion are confidential Family Court documents that should not be publicly filed and defendants ask the Court to seal them.

## II. Whether The Court Should Issue An Order To Produce Family Court Transcripts/Records

### Plaintiffs' Position.

For many of the same reasons that drive Plaintiffs' request for an Order compelling production of the search warrant and DA's file, Plaintiffs ask the Court to issue an Order to Produce transcripts and records relating to this case that Plaintiffs will serve upon the Manhattan Family Court. Plaintiffs have already obtained select Family Court transcripts, which contain valuable information, for example, Defendant Sanchez's testimony about the incident, and the judge's remarks as to whether there is any evidence to corroborate the same. However, the Parties still need—and Plaintiffs have had difficulty obtaining—transcripts of the October 10, 2014, and October 16, 2014, Family Court hearings discussing Defendants' alleged emergency-circumstances removal of Ms. Bridgeforth's daughter. In light of the false statements that Defendants made to ACS as described in Section I, these Family Court transcripts are likely a ripe source of information that may provide support for pleading amendment to add a family-togetherness due process claim for Ms. Bridgeforth and a Fourth Amendment seizure claim for the little girl. Quite apart from that possibility, though, Plaintiffs are entitled to these statements which were made extremely close in time to the incident.

### Defendants' Position.

Again, these documents are not in defendants' possession, custody, or control. Defendants have no objection to plaintiffs obtaining these records, pursuant to proper measures, with the understanding that they will be produced to defendants in due course.

## III. Whether Officer Sanchez Must Bring Handwritten Notes To Deposition

### Plaintiffs' Position.

In connection with Defendants' allegation that Plaintiffs were involved in a sex trafficking operation, they seized four pieces of paper from Ms. Bridgeforth's apartment containing allegedly incriminating information about a hotel. There are no copies of the set of papers in the record, and so on September 1, 2016, Plaintiffs served Defendants with a request to inspect them. Defendants objected because it would have taken Defendant Sanchez an entire day to coordinate the inspection, and so Plaintiffs reasonably compromised and asked Officer Sanchez to simply bring the four pieces of paper to his deposition. Defendants now object to this as well. Plaintiffs argue that this is a baseless objection and that it would be prejudicial for Defendants to keep this allegedly damning evidence from me as I

depose Defendants. One of the chief questions in this case is whether Defendants' evidence reasonably supported probable cause for them to believe that Plaintiffs were involved in a sex trafficking ring, and Plaintiffs would like to properly probe during Defendants' depositions whether and why they believed that the papers contributed to alleged probable cause.

### Defendants' Position.

Defendants have repeatedly and consistently stated that they have *no objection* to producing the evidence in question for inspection. Defendants merely asked that the inspection be set for a time convenient to defendants, particularly considering that it does take hours for the arresting officer to both obtain the evidence from storage, and to return it there after the inspection. If plaintiff insists on doing the inspection prior to Officer Sanchez's deposition, defendants are willing to do that, with the understanding that it may impact the time that the office is available to testify. However, defendants submit that there is no reason for the inspection to be done at the same time as Officer Sanchez's deposition. After all, these are documents that were found in plaintiff Bridgeforth's apartment, and their contents are summarized on the property voucher that has been produced; plaintiffs' counsel can therefore learn about them from his own clients immediately, without Court intervention.

## IV. Whether Defendants Must Produce 30(b)(6) Witness Relating To OLPA Records

### Plaintiffs' Position.

One of Plaintiffs' claims is that Defendants unreasonably detained them for an excessive amount of time, <u>regardless</u> of whether a jury finds that Defendants falsely arrested Plaintiffs. Relevant records in this regard are Plaintiffs' OLPAs, which are a record that tracks an individual's progress through each stage of custodial arrest (detention through arraignment), with the aim of monitoring whether and to what extent the City excessively detains arrestees

Plaintiffs' OLPAs reveal something of great interest, which is that information is "missing" for many, many of its required fields. This missing information, combined with records showing that Defendant Sanchez and Defendant Zerafa went off-duty for hours-long stretches while Plaintiffs remained jailed, tends to show excessive detention. To make matters even worse for Defendants on this point, the record shows that the DA's Office told Defendant Sanchez at 2:00 p.m. on October 10, 2014, that they declined to prosecute Plaintiffs, yet Plaintiffs' OLPAs show that they were not released until many hours later.

In light of the foregoing, in order to gain a proper understanding of OLPA fields' meanings for use at trial (which fields are on their face at times inscrutable), Plaintiffs served Defendants with a FRCP 30(b)(6) notice, seeking to take deposition testimony from a City witness regarding the structure of the form, its purpose, the significance of its fields, and more. This is precisely what Rule 30(b)(6) was designed to facilitate, <u>i.e.</u>, the City's being able to speak through a designated agent about institutional matters. Fed. R. Civ. P. 30(b)(6). It should be noted that Defendants objected to Plaintiffs' 30(b)(6) notice as unclear, yet the OLPA is a one- to two-page form with a fixed number of fields. The simple document's four corners will guide and limit the scope of Plaintiffs' related Rule 30(b)(6) deposition.

**Defendants' Position.**

Defendants oppose plaintiffs' Rule 30(b)(6) notice, which is annexed hereto as Exhibit A. The topics specified for deposition are objectionable. Under FRCP 30(b)(6), "a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination." (Emphasis added). Plaintiffs' notice fails to describe the matters for examination with reasonable particularity and therefore, makes it impossible for Defendant City to designate an appropriate person or persons to testify. EngHatcher v. Sprint Nextel Corp., 07 Civ. 7350 (BSJ)(KNF), 2008 U.S. Dist. LEXIS 67052, at *13 (S.D.N.Y. Aug. 28, 2008). ("An overly broad [ ] 30(b)(6) 'notice subjects the noticed party to an impossible task,' because, where it is not possible to 'identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible.'") In this case, plaintiffs' requested topics are overly broad making it impossible for defendants to identify a witness or witnesses. The requested topics are also not germane to this case. The OLPA form speaks for itself in terms of how long plaintiffs were held, which is also something they have knowledge and should be able to testify to.

## V. Whether Defendants' Responses To Plaintiffs' Requests To Admit Are Sufficient

**Plaintiffs' Position.**

On September 1, 2016, Plaintiffs served Defendants with three requests to admit. The first asked Defendants to admit "that Defendants did not seize and voucher as evidence any handcuffs, knives or buckets during Defendants' execution of the search warrant." Defendants objected to the request as vague and ambiguous and admitted "only [that] they are not in possession of a property voucher for these items." Plaintiffs argue that Defendants may not admit "only" that they have no property voucher listing handcuffs, knives or buckets. This is a half-answer. Defendants may admit what Plaintiffs have posed, or Defendants can deny it with citations to the record. Insofar as Defendants admit only that they did not voucher handcuffs, knives or buckets, this implies that they seized them but did not voucher them. If Defendants deny the request to admit on that basis, then Defendants must so state. Perhaps obviously, Plaintiffs' request to admit is "calculated to eliminate the necessity of proving facts that are not in substantial dispute and to narrow the scope of disputed issues," which is precisely the point of FRCP 36. See Freydl v. Meringolo, No. 09 Civ. 07196 (BSJ) (KNF), 2011 WL 2566079, at *2 (S.D.N.Y. June 16, 2011). But as it stands, Defendants' response fails to comply with the Rule. Defendants are not obligated to narrow issues if an issue cannot be narrowed, but Defendants may not decline to narrow issues simply because they would not like to make reasonable inquiry to a request to properly answer a request to admit. See Fed. R. Civ. P. 36(a)(4) (stating that a party answering a request to admit must make a reasonable inquiry before claiming lack of knowledge). Furthermore, Defendants improperly seek to render their admission without force by simultaneously objecting that Plaintiffs' request was vague and ambiguous. It is unclear what is vague or ambiguous about Plaintiffs' request.

Next, Plaintiffs asked Defendants to admit "that Ms. Sims never wrote, or adopted by her signature, any written statement, sworn or otherwise, containing allegations against Plaintiffs, Ms. Hau Sans or Mr. Kirkland," and "that during the search warrant Defendants did not collect any fingerprints, handprints, hairs and fibers, swabs and/or any sample of DNA as forensic evidence." Defendants

provided qualified—and thus insufficient—responses to these requests to admit as well, and again simultaneously and without justification objected that the requests to admit were vague and ambiguous.

### Defendants' Position.

Defendants stand by their responses to plaintiff's Requests to Admit ("RTA"). The RTA ask for certain admissions to be made by "defendants," which in this case are a municipal defendant and five individual defendants. Thus, who the RTA are directed to is itself vague.

Moreover, as discovery is ongoing, and as documents and information related to the underlying investigation continues to be discovered and produced, defendants ask for additional time by which to update or amend their answers to the RTA. FED. R. CIV. P. 36(a)(6) permits a final decision regarding a motion on sufficiency of RTA answers/objections to be deferred until a pretrial conference or a specified time before trial. We ask the Court to do so here, so that defendants can continue to focus on gathering the full universe of information pertinent to answering the RTA on behalf of all defendants, if that is what the Court orders.

### VI. Whether Plaintiffs May Obtain Ms. Hau Sans's and Mr. Kirkland's Unsealed Files

### Plaintiffs' Position.

In addition to Plaintiffs, two other adults were arrested during the incident: Sarah H. and Eric K. Insofar as the D.A.'s Office also declined to prosecute Sarah and Eric, their files are sealed. Defendants claim that Plaintiffs may not have access to them for this reason. As discussed above, Atwell holds that the broad remedial purposes of federal civil rights law generally counsels against liberal reliance upon state privacy rules to frustrate federal discovery. Atwell, 2008 WL 5336690, at *2. Even still, Plaintiffs have some burden of production and persuasion to unseal the third-party records. They argue that the intent behind New York Criminal Procedure Law Section 160.50—to lessen the adverse consequences of unsuccessful criminal prosecutions—would not be served by keeping the third-party records sealed here. That is because the Parties all already know that Eric and Sarah were there that night; that they were arrested alongside Plaintiffs; and that the DA's Office declined to prosecute them, either.

At the same time, Plaintiffs contend that they have established a particularized need for Sarah's and Eric's files. Eric's and Sarah's records contain additional Party and non-party statements about the incident. Also, the records further will highlight Defendants' unreasonable handling of this incident which included attempting to charge Eric only with OGA for failure to open the door, while Defendants sought to blame everyone else for sex trafficking without exception. In addition, Plaintiffs recollect that Eric was released at the same time they were, which provides greater support for their unreasonably excessive detention claim because it made little sense to jail everyone for forty hours when Eric's charge, as compared to everyone else's, was a minor one.

**Defendants' Position.**

As plaintiffs concede, the nonparty arrest records in question are sealed pursuant to N.Y. C.P.L. § 160.50, which states:

> Upon the termination of a criminal action or proceeding against a person in favor of such person . . . unless the district attorney upon motion with not less than five days notice to such person or his or her attorney demonstrates to the satisfaction of the court that the interests of justice require otherwise, or the court on its own motion with not less than five days notice to such person or his or her attorney determines that the interests of justice require otherwise and states the reasons for such determination on the record, the record of such action or proceeding shall be sealed and the clerk of the court wherein such criminal action or proceeding was terminated shall immediately notify the commissioner of the division of criminal justice services and the heads of all appropriate police departments and other law enforcement agencies that the action has been terminated in favor of the accused, and unless the court has directed otherwise, that the record of such action or proceeding shall be sealed.

While defendants have no objection in theory to the unsealing of the arrest and District Attorney's Office paperwork regarding the nonparties, we disagree with plaintiffs' method of obtaining this result. These nonparties are individuals known to plaintiffs; indeed, Bridgeforth and Broadus left their young child overnight with them, and Fairfax was, at the time of the incident, subject to an order of protection as to Ms. Hau Sans. Before involving the Court, plaintiffs should make efforts to obtain releases from the nonparties, or at least give them reasonable notice of the instant application. Since there is no showing that this has occurred, the request should be denied without prejudice.

Thank you in advance for your consideration.

Sincerely,

/s/
Ryan Lozar
Attorney for Plaintiffs

The parties shall appear for a conference on December 16, 2016 at 2:00 p.m.

SO ORDERED:

Dated:  December 13, 2016
        New York, NY

WILLIAM H. PAULEY III
U.S.D.J.