The Law Office of Ryan Lozar, P.C.
305 Broadway, 10th Floor, New York, NY 10007
Tel: (310) 867-1562; Alternate Tel: (646) 666-8262; Fax (877) 666-4456
ryanlozar@gmail.com
www.ryanlozar.com



JUNE 30, 2017

Re:     <u>Bridgeforth, et al., v. City of N.Y., et al.</u>, No. 16 Civ. 273 (WHP)

Dear Judge Pauley:

  I represent Plaintiffs in this Section 1983 action.  I write to submit the Parties' joint filing regarding Plaintiffs' motion for certain discovery.  In the event the Court would like to set conference relating to these and other pretrial issues, the Parties propose the following mutually agreeable dates/times:  July 7 (any hour), July 10 (3:30pm onward), July 12 (2pm onward), July 14 (2pm onward).

  The close of discovery in this case is presently set for July 7, 2017.  Defendants herein move, and Plaintiffs consent to the motion, for extension of that date to July 31, 2017, to accommodate any conference the Court wishes to set and resolution of the issues described in this letter.  As required, the Parties have conferred at length about these matters.  Most recently, Ms. Bardauskis and I met in person on Thursday, June 22, 2017, to speak about them.  We have spoken about them at least ten times prior to that occasion via letter, email and telephone as well.

## I.     Plaintiffs' Position

### a.     **Plaintiffs seek a Court Order pursuant to FRCP 37(a) compelling Defendants to produce certain records.**

  At this writing, Defendants have failed to produce certain categories of paper discovery which I will describe in Section I.c. on the next page.  Plaintiffs' requests for this material is longstanding, but Defendants have been unable to locate them and discovery is about to close.  As a result, Plaintiffs respectfully request that the Court issue an order pursuant to FRCP 37 compelling Defendants to produce the records by a date certain so that Plaintiffs may preserve a future motion for an adverse evidentiary inference if appropriate.  <u>See, e.g.</u>, Fed. R. Civ. P. 37(a)(3)(B), 37(b)(2)(A).[1]  In Section II of this letter, Defendants characterize this as a needless motion for the Court's involvement because Defendants do not contest that many of the requested records are discoverable, but in <u>Penthouse Int'l, Ltd. v. Playboy Enters., Inc.</u>, 663 F.2d 371, 389 (2d Cir. 1981), the Second Circuit held that "it is doubtful whether sanctions for non-production of documents could be imposed without . . . first obtaining a Rule 37(a) order for their production."

### b.     **Brief Summary of Plaintiffs' Allegations**

  In this action, Plaintiffs allege that NYPD Defendants falsely arrested them and unlawfully searched their home in unreasonable reliance upon the false allegations made by a woman named Necola Sims that Plaintiffs falsely imprisoned her and another woman—"Gloria"—for work in a sex

---

[1] In terms of the timing of Plaintiffs' FRCP 37(b) motion, the Parties agree that, with the Court's permission, it may be raised in <u>in</u> <u>limine</u> motion in the event that Plaintiffs' claims survive Defendants' intended summary judgment.

trafficking operation. What follows are Plaintiffs' allegations, drawn from their complaint and the record. For expedience, Plaintiffs do not attach extensive supporting exhibits, but stand ready to provide the same upon the Court's request.

The incident began at approximately 2:30a.m. on October 9, 2014, when Sims called 911 and reported that she had just escaped from Plaintiffs' home after being imprisoned there in connection with a sex trafficking operation. Sims told Defendants and other responding officers that Plaintiffs had handcuffed Sims to a radiator in their home next to a nude young girl named Gloria; that Plaintiffs forced the chained women to go to the bathroom in a bucket; that Plaintiffs force the women to wear and pose in provocative clothing for prostitution ads; and that Plaintiffs had guns, chains and a machete in their home. Defendants gained access to Plaintiffs' home and searched it without a warrant. At the time, Plaintiffs were at work (they made their living recycling and worked night shifts), and their friends were babysitting their daughter in the apartment. Defendants found no Gloria, guns, chains or machetes.

Because police initially wondered whether Plaintiffs had removed Gloria from the apartment before they responded to the scene, the police issued a "Level 1 Mobilization" at approximately 5:00a.m. seeking department-wide assistance in finding Gloria, and they called in detectives to investigate. By 7:30a.m., Night Watch detectives determined that Gloria did not exist; that Sims had invented her; and the Level 1 was terminated from radio dispatches. Defendants never made any further effort to find Gloria. Despite this early evidence that Sims was an incredible complainant, when Plaintiffs Jasmine Bridgeforth and Delano Broadus arrived back home, Defendants arrested them.

Inexplicably, a Defendant told ACS that police found chains in Plaintiffs' home. This was not true, but Plaintiffs' child was removed. This Defendant admitted at his deposition that there were no chains in Plaintiffs' home. This same Defendant took photographs at roughly the same moment, which show that there were no chains on the walls, or any of the other things that Sims said police would find.

   c. **Plaintiffs seek an Order compelling Defendants to produce relevant records including handwritten draft reports, an aided report, HTAU records and related chain of custody documents, interrogation notes, memo books and Night Watch detective records.**

The records that are the subject of Plaintiffs' motion include handwritten government records, Sims's aided report, High Tech Analysis Unit ("HTAU") records, interrogation notes, officer memo books, Night Watch detective records, and select ACS records. I will describe these records in turn.

<u>**Handwritten records.**</u> Defendant Sanchez's testimony and the evidentiary record shows that over the course of the investigation of Ms. Sims' allegations, he handwrote "scratch" records. In light of the fact that other aspects of the record show that Ms. Sims's allegations changed over time, Defendant Sanchez's handwritten records are extremely relevant to whether Defendants ever had reasonable cause to treat Ms. Sims as a credible reporter and/or at what moment that dissipated. Defendant Sanchez's

supervisor Lieutenant Michael Guenther testified that such "scratch" records are attached to finalized arrest reports and complaints.[2]

**Sims aided report.**  The record shows that Defendant Sanchez created an aided report for Ms. Sims, but Defendants cannot locate and have not produced it.  The aided report is relevant because it documents Sims's physical injuries and condition, both of which are central issues due to her evolving story as well as evidence that she was intoxicated.  Aided reports are stored in the NYPD's On Line Aided System ("OLAS"), with original hard-copy drafts stored in sequential order within the station-house where they were created.  As for the on-line aided reports, they are organized in and queried from OLAS using a 12-digit number containing precinct, year and serial numbers.

**HTAU records and chain of custody records.**  In March 2015, roughly five months after the DA's Office declined to prosecute Plaintiffs in connection with Sims's allegations, and five months after the search warrant obtained by Defendant Zerafa expired, Plaintiffs' telephones and a computer were delivered to HTAU for search.  According to ADA Caitlin Nolan, the resulting evidence showed nothing supportive of Sims's allegations.  The HTAU records thus are relevant to Plaintiffs' actual innocence of Ms. Sims's allegations that they were taking photos of her and selling her on the Internet, and related chain of custody records will show which Defendants, if any, were involved in the belated and unprivileged HTAU search, and what statements about the incident they made to HTAU to explain the basis for the belated and unprivileged request that electronic data be pulled off of the devices.

**ACS records relating to a report about FB's condition.**  While Plaintiffs were incarcerated due to Sims's imprisonment and sex trafficking allegations, Defendants and/or other members of the NYPD transported FB first to St. Luke's then Bellevue for review of her condition.  ACS successfully asked NY Family Court to order Bellevue to produce these records that same month and obtained them.  Plaintiffs served Defendants with a release for the records, but they have not been produced.  The arrest-related assessment of FB's condition is relevant because Bellevue's specialized child assessment unit found FB without indication that she had been involved in a situation of the kind described by Sims.

**Interrogation Notes.**  Upon their arrest, Plaintiffs were taken one by one into an interrogation room at the precinct, and questioned about Ms. Sims's allegations.  Defendant Zerafa's questioning became very specific during this interrogation; Plaintiffs claim that Defendants took notes during these lengthy interviews; and Plaintiffs have requested these notes.  Yet the records have not been produced from the interrogation sessions that further undermined Ms. Sims's version of events.

**Memo Books and Night Watch Detective records.**  There are NYPD member memo books and Night Watch Detective records which have not been located and produced.  The Night Watch records are

---

[2] The locations where copies of these records were likely sent include, but are not limited to:  the DA's Office (where Defendant Sanchez forwarded arrest documents to which the handwritten records would, according to Guenther, have been attached); PSA 6 Command files (where Defendant Sanchez worked and continues to work); the Human Trafficking Team Vice Unit's paper file on this case (Defendant Zerafa testified that he maintained one relating to his investigation into the event); Night Watch detective files (the record shows that two Night Watch detectives conducted their own investigation which determined that Ms. Sims lied about Gloria); and more.

particularly important because the Night Watch Detectives concluded after investigation and review of CCTV tape that Gloria did not exist and was a fictional character that Ms. Sims invented.

**Defendants' CCRB, IAB and DAO files.** Plaintiffs also seek Defendants' production of their CCRB, IAB, DAO and other disciplinary files. As detailed below, Defendants do contest the relevance of these records. Plaintiffs' Counsel attempted to cooperate with Defendants to narrow this production by inspecting so-called summary reports at Defendants' Counsel's office, but that inspection was fruitless because the summary reports were so abbreviated, their content communicated almost nothing about the nature or disposition of underlying matters. As a result, Plaintiffs' Counsel requests that the files themselves be produced in toto.

In terms of discoverability, it is now commonplace in the courts of the Second Circuit to require the production of CCRB and IAB files relating to both substantiated and unsubstantiated allegations of similar conduct. See, e.g., Gibbs v. City of N.Y., No. 06 Civ. 5112(ILG) (VVP), 2008 WL 314358, at *1 (E.D.N.Y. Feb. 4, 2008); Zhao v. City of N.Y., No. 07 Civ. 3636(LAK)(MHD), 2007 WL 4205856 (S.D.N.Y. Nov. 21, 2007); Kitevski v. City of N.Y., No. 04 Civ. 7402 (RCC) (RLE), 2006 WL 680527, at *4 (S.D.N.Y. Mar. 16, 2006). Moreover, these records are not subject to derivative Section 160.50 or generically-claimed "privacy" redactions, and the Parties will in any event treat them under the terms of the Court's Confidentiality Order. See Young v. City of N.Y., No. 10 Civ. 1701 (RMB) (THK), 2010 WL 3938372, at *2 (S.D.N.Y. Oct. 7, 2010) ("The Court is unaware of any case in which the City has claimed, and a court has accepted, that CCRB and IAB files should not be produced because the files are subject to sealing under N.Y. C.P.L. § 160.50"); Zhao, 2007 WL 4205856, at *2 (holding that complaints and the underlying information is discoverable).

### II. Defendants' Position

Defendants reluctantly submit this joint letter to the Court, as they do not wish to join in wasting the time and resources of the Court in an effort by Plaintiffs that is wholly premature and unnecessary. The parties have met and conferred a multitude of times, and at length, including most recently, yesterday, during a telephone call lasting almost 45 minutes, as well as an in-person conversation on June 22, 2017 at the Office of Corporation Counsel. The parties agree that there are no significant discovery disputes at this time, and that both parties have been acting cooperatively and in good faith to conduct remaining discovery. However, Plaintiff's counsel has intimated to the undersigned that the purpose of this letter is to essentially to preserve the opportunity to make a Rule 37 motion at a later date, as counsel believes he needs an order under Rule 37(a) of the Federal Rules of Civil Procedure to later make a motion, if necessary, under Rule 37(b). Aside from the conjecture and speculation contained in Plaintiffs' portion herein, Defendants contend that Plaintiffs' position regarding the need for such an application to the Court is misplaced.

Defendants have continued to respond to Plaintiffs' demands, and Plaintiffs' counsel's numerous inquiries, continue to act in good faith, and conduct continuous searches for documents and other information related to this case. Defendants have advised Plaintiffs that they will supplement their disclosures by July 29, 2017. It is entirely premature that Plaintiffs would seek adverse evidentiary inferences when discovery has not yet closed, and when Defendants have already represented, through a number of conversations with counsel, and in formal discovery responses, that they are continuing to

search and/or have already represented to counsel that, to the extent that certain documents cannot be located, they will provide affidavits regarding same to Plaintiffs. Moreover, the documents requested that Plaintiffs cite as remaining in dispute have already been disclosed, or are not in the custody and control of the defendants, and/or are not relevant and not proportional to the needs of this matter.

Due to space limitations, Defendants do not specifically address Plaintiffs' contentions regarding the allegedly "outstanding" documents. However, the undersigned will be prepared to address each demand at any conference that may be scheduled, and Defendants briefly set forth their position regarding each of Plaintiffs' demands as follows:

- "Handwritten Records": Defendants have advised Plaintiffs on numerous occasions that they are continuing to search for information responsive to this request, and will provide a formal response or affidavit by July 29, 2017.

- Sims' Aided Report: Defendants have advised Plaintiffs that they are continuing to search for information responsive to this request, and will provide a formal response or affidavit by July 29, 2017.

- HTAU Records: Defendants object to Plaintiffs' request herein as not relevant and not proportional to the needs of the case. Defendants note that the District Attorney's Office is a non-party, the District Attorney declined to prosecute all three Plaintiffs, and Plaintiffs have not asserted any malicious prosecution claim. Further, actual innocence is not the standard, but rather the standard is that of probable cause.

- ACS Records: Defendants object on the grounds that ACS is a non-party and further that Defendants never received any such release for St. Luke's Hospital, which was communicated to Plaintiffs, and have already produced documents obtained in connection with the FDNY release. Defendants further state that they will process any properly executed release provided by Plaintiffs with respect to the above-referenced provider St. Luke's Hospital, and will supplement this response within 30 days should any responsive documents be obtained.

- Memobooks: Defendants have advised Plaintiffs that such documents have been requested and that Defendants will supplement this response within thirty (30) days should any responsive documents be located.

- IAB Files: As a compromise, the parties agreed to produce closing summary reports to Plaintiffs, which took place at a discovery and inspection on June 22, 2017. Defendants maintain that such files are not relevant, and are simply not proportional to the needs of the case.

The Federal Rules of Civil Procedure provide that where a party "fails to obey an order to provide or permit discovery," the court may issue "further just orders [including] (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims [and] (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(i)-

(ii). "In fashioning an appropriate Rule 37 sanction, the court may permissibly 'presume from a party's willful failure to answer a discovery request relating to a particular issue that the facts of that issue are established against the noncompliant party.'" Chevron Corp. v. Donziger, 2016 U.S. App. LEXIS 14552 at 186 (2d Cir. N.Y. Aug. 8, 2016) (quoting Southern New England Telephone Co. v. Global NAPs Inc., 624 F.3d 123, 147 (2d Cir. 2010)). Here, it is Defendants' position that Plaintiffs are entirely premature in filing this application to the Court where there has been no obstructive or dilatory conduct on the part of Defendants. To the contrary, Defendants continue to respond to Plaintiffs' requests and remain in regular communication regarding the status of outstanding documents, thus making contemplation of such a future motion unnecessary and oblique on the part of Plaintiffs.

Moreover, on June 28, 2017, Plaintiffs' counsel notified the undersigned that the one as-yet undeposed Plaintiff is now available to be produced for deposition, one week prior to the close of discovery. The Plaintiff had been previously hospitalized for an indefinite length of time and, upon information and belief, Plaintiffs' counsel had not been able to subsequently locate the Plaintiff. Thus, Defendants respectfully request an extension of discovery for the purpose of taking the remaining Plaintiff's deposition. Defendants intend to use the maximum amount of time permitted by the Federal Rules to depose the Plaintiff, without leaving the deposition open for a later date, as counsel has proposed.[3]

For the foregoing reasons, Defendants respectfully request that the Court: (1) deny Plaintiff's request for any order sought under Fed. R. Civ. P. 37, as it is premature and unnecessary at this stage; and (2) grant a brief extension of the discovery period, from July 7, 2017 to and including July 31, 2017 to depose the remaining Plaintiff and supplement Defendants' discovery responses.

Defendants thank the Court for its consideration.

### III. Conclusion

In light of the foregoing, the Parties respectfully request the Court's help in resolving these final discovery disputes. Thank you in advance for your consideration.

Sincerely,

*Ryan Lozar*

Ryan Lozar
Attorney for Plaintiffs

---

[3] Plaintiffs recognize that this Plaintiff must sit for deposition if the Plaintiff's claims are to move forward and I will be prepared to address this issue at conference with the Court. The other two Plaintiffs' depositions have been taken. The Court will recall that medical issues complicated the remaining Plaintiff's deposition in the past. I have been in contact with this Plaintiff recently and, on June 28, 2017, I proposed dates for the Plaintiff's deposition to be taken in one seven-hour session, or in installments as a reasonable accommodation of the medical condition in the event that that is needed (this installment proposal is what Defendants are referring to when they mentioned their opposition to keeping it open).