The Law Office of Ryan Lozar, P.C.
305 Broadway, 10th Floor, New York, NY 10007
Tel: (310) 867-1562; Alternate Tel: (646) 666-8262; Fax 1-877-666-4456
ryanlozar@gmail.com
www.ryanlozar.com



December 20, 2017

Re:     Bridgeforth, et al., v. City of N.Y., et al., No. 16 Civ. 273 (WHP)

Dear Judge Aaron:

    I represent Plaintiffs in the above-captioned Section 1983 litigation alleging, among other things, that Defendants violated their rights through false arrest and unreasonably excessive detention. I write to reply to Defendants' opposition to Plaintiffs' discovery motion. Docket No. 70 (Pl. Motion); Docket No. 74 (Dft. Resp.).

    I.     **Factual Summary.**

    The genesis of this case was a 911 call placed by a woman named Necola reporting that Plaintiffs had imprisoned her in their apartment at 1430 Amsterdam Avenue to make her a prostitute; that Plaintiffs had achieved this by threatening her with guns and knives; and that while she had managed to escape, she had left behind a teen girl who was still Plaintiffs' captive. When Defendants responded, Necola told them that Plaintiffs kept her and the still-trapped teen "Gloria" chained to a radiator; forced them to go to the bathroom in a bucket; and that Plaintiffs also threatened them with a machete.
    Although Necola was drunk, which one of the responding Defendants observed in his memo book, Defendants and other police immediately secured the building perimeter; radioed a City-wide alert for Gloria; and gained entry to Plaintiffs' apartment. Inside, they found no Gloria, buckets, machetes, or anything else that Necola suggested would be there. Detectives concluded prior to Bridgeforth's and Broadus's arrests that Gloria was a fictional character invented by Necola.
    Despite the fact that NYPD colleagues concluded that Necola had lied, Defendants arrested Plaintiffs. Plaintiffs were then jailed for thirty-seven hours before the New York County DA Office declined to prosecute them given the above facts. Meanwhile, Plaintiffs and their property were subject to unlawful search.
    One of the Defendants, who was among the first to enter Plaintiffs' home and saw firsthand that Necola's story was not true, reported the "sex-trafficking" arrest to ACS and Bridgeforth and Broadus's child was taken into state custody. This same Defendant reported that Plaintiffs' had chains on their walls, which was not true, and contemporaneous police photos show nothing of the sort. He was also Plaintiffs' arresting officer.

    II.     **Discovery Dispute.**

    On September 8, 2016, Plaintiffs served Defendants with DRIs seeking investigative, disciplinary and sanction files corresponding to entries on Defendants' CCRB, IAB and Central Personnel Indices. Exh. 2 at Document Request 38. In the fifteen months since that time, Defendants have not produced the files. Not only was Plaintiffs' related Document Request

clearly stated, but it was clearly understood—the Parties have discussed the delinquent production endlessly.  See, e.g., Exh. 3 (collecting the Parties' related correspondence in chronological order).

Eventually, Plaintiffs were obligated to file related motions.  For example, in a June 30, 2017, filing, Plaintiffs moved to compel production of the records, with Defendants responding to the Court that the motion was premature and unnecessary.  Docket No. 57.  At related conference, because Defendants agreed to produce the records, the Court terminated Plaintiffs' motion.  Docket Entry 7/13/2017.  However, as the close of discovery approached, Defendants represented to Plaintiffs that production was being prepared or that they did not believe they had an obligation to produce (Defendants' position was different depending on the moment).  Exh. 3 at 28-34.

In October 2017, with the production now delinquent, Plaintiffs raised the issue again with the Court.  Docket No. 62; see also Exh. 1 at 26-27 (copy of filing).  At related conference, the Court ordered Defendants to produce the files.  Docket No. 65; see also Exh. 1 at 28 (copy of Order).  Defendants still stonewalled on the production, continued to represent to Plaintiffs that production was forthcoming, asked the Court for extension of the production deadline and received the extension, and missed even that deadline.  Docket No. 67 (extension motion); Docket No. 68 (Order granting extension); Exh. 3 at 34-38 (the Parties' correspondence about ongoing failure to comply).

When Plaintiffs finally received the late production of the purported "files," the production only contained twenty-seven pages of new information; corresponded to only one Defendant; and was incomplete even as to that one Defendant's index entries.  Exhs. 6-12.[1]  Setting aside that this Defendant-specific production was incomplete in these ways, even as to the matters addressed by the produced records, only twenty-seven pages of content was delivered.

On its face, the twenty-seven-page production falls short of the Court's Order and Defendants' discovery obligation.  For example, certain pages correspond to what the related index entry shows was a two-year investigation into very serious allegations that the Defendant perjured himself in connection with an arrest that left a young man with permanent neurological injury relating to a use of force.  It belies logic to think that twenty-seven pages of information was collected during this time (and I note that not all of the twenty-seven pages even correspond to that particular investigation).  Perhaps obviously, in this case, given that the same Defendant felt no compunction about telling ACS that he saw chains hanging on Plaintiffs' walls in the aftermath of the "sex trafficking" allegations disproven by departmental detectives and despite photographic evidence showing the contrary, this Defendant's false statements in this other, very serious context are extremely relevant to Plaintiffs' case as potential FRCP 404(b) evidence, Monell-related evidence, and more.[2]

Defendants' twenty-seven-page "file production" is also demonstrably deficient because the content of that production references, for example, a deadline for submission of investigative records pertaining to misconduct allegations which are not in discovery.  This means one of two things.  Either production is incomplete or Plaintiffs' pursuit of related discovery takes different shape relating to the City Defendants' deliberate indifference to the known risk that the Defendant posed in terms of future rights violations, i.e., the absence of records amounts to a municipal shrug in response to various misconduct allegations.

I would also like to note that this discovery dispute has been litigated by the Parties both informally and before the Court with respect to the baffling lack of information on the

---

[1] Due to the confidential designation of these records, I have not filed them on ECF; however, I will bring three hard-copy sets of them to the December 21, 2017, conference for the Court and Counsel to review together.

[2] Again I am being somewhat vague here due to the confidentiality designations on the material but, as noted in footnote 1, I will have the hard-copy exhibits at the Dec 21 conference to support this and other arguments.

Defendants' IAB indices in particular.  As I will show the Court during the December 21 conference, the records in discovery to date are so spare in their content and use of acronyms/lingo as to be nearly indecipherable.  This is an important point because Defendants have argued that they think that Plaintiffs are barking up a fruitless tree with their discovery request for this material.  Setting aside that the Court already ordered its production, Defense Counsel has herself admitted to Plaintiffs' Counsel and the Court at conference that she herself was unable to tell from the records' content to date what the underlying misconduct allegations were about, what the disposition of the case was, or what sanction or personnel action arose from the case, if any.

      As one example of why this is so, I again note that the indices bear mystifying lingo and acronyms which I can only hope to decipher by reading NYPD reports relating to departmental investigative functions of the sort that I have included here at <u>Exhibit 4</u> and <u>Exhibit 5</u>.[3]  Even supposing I can achieve some armchair understanding of these terms through self-study, at best I can sort of begin to understand misconduct allegations' theoretical handling; yet no matter what I remain with a dearth of information as to these specific Defendants' allegations' substantive content and/or their actual departmental handling and disposition.

      This brings me to my request that the Court allow me a brief FRCP 30(b)(6) deposition of a City Defendant representative relating to the lingo-ridden and acronym-heavy coding of officer records relating to allegations of misconduct and how those codes indicate the actual non-existence (as Defendants peculiarly claim in light of my argument <u>supra</u>) or existence of related records.  In the event that the deposition confirms additional records' existence, then I can also use the brief examination to determine the records' location and their custodian where Defense Counsel has heretofore allegedly been unable.  In the event that the deposition confirms the records' non-existence, then I will use the examination's to develop the City's failure to seriously address, preserve and/or track serious misconduct allegations to make my clients' arguments as best I am able.  However, I again note that it was not until Defendants' recent production of a mere twenty-seven pages of "files" after fifteen months of complaint and stonewalling that Plaintiffs knew that this was the purported discovery landscape (however unlikely).  This, I argue, is the good cause that Defendants disingenuously state Plaintiffs cannot show to justify asking for the Court's assistance and permission to take the FRCP 30(b)(6) deposition.

    **III.**    **Conclusion.**

      In light of the foregoing, Plaintiffs respectfully request that the Court grant their motion for an Order compelling FRCP 30(b)(6) deposition of a municipal representative with knowledge of the matters raised herein and at tomorrow's conference, as well as additional file production as that examination reveals would be possible and appropriate.  Because I developed these papers within a day of Defendants' filing of their opposition, it is with hope that I thank the Court in advance for additional opportunity to explain my position during tomorrow's conference with the aid of the hard-copy Exhibits that I have mentioned.

                                      Sincerely,

                                        Ryan Lozar

---

[3] I will direct the Court to the relevant parts of these reports during conference in conjunction with reference to the hard-copy confidential materials that I bring.