Confidential Material

```
FAMILY COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY      PART 6
-------------------------X

IN THE MATTER OF:

    ACS-NY,

                    Petitioner,
                                        Docket No.:
                                        NN-45041-14
    Vs.

    JASMINE BRIDGEFORTH and
    DELANO BROADUS,

                    Respondents.

-------------------------X
```



PLAINTIFF'S EXHIBIT 64 5-10-17

June 10, 2015

| | |
|---|---|
| HELD AT: | FAMILY COURT OF THE STATE OF NEW YORK<br>NEW YORK COUNTY<br>CITY OF NEW YORK<br>60 Lafayette Street<br>New York, NY 10013 |
| BEFORE: | HONORABLE EMILY M. OLSHANSKY,<br>Judge |
| APPEARANCES: | ELIZABETH VERILLO, ESQ.<br>Attorney for the Petitioner<br><br>JESSICA WEIDMANN, ESQ.<br>Attorney for the Respondent Father<br><br>TEGHAN DELANE, ESQ.<br>Attorney for the Respondent Mother<br><br>MELISSA FRIEDMAN, ESQ.<br>CAROLYN KALOS, ESQ.<br>Attorneys for the Children |
| TRANSCRIBER: | LOUISA RETTLER<br>LYNN M. REINHARDT |

```
 1    Broadus father.
 2              THE CLERK:  Have a seat.  And you swear to
 3    tell the truth?
 4              MS. JASMINE BRIDGEFORTH:  Yes.
 5              THE CLERK:  Your name and relationship?
 6              MS. BRIDGEFORTH:  Jasmine Bridgeforth, I'm
 7    F     s mother.
 8              THE CLERK:  Thank you.
 9              THE COURT:  Good morning everybody.
10              MR. BROADUS:  Good morning.
11              THE COURT:  So I know some people--I--
12    whatever happened with scheduling I'm sorry.  We had
13    it for some time.  I know that other people had it
14    for another--I apologize.  And so given that, I
15    believe we have a decision on the objection which we
16    can distribute or it may be that Ms. Mulan already
17    did.
18              MS. DELANE:  She did.  I have it.
19              MS. VERILLO:  Yes.
20              MS. WEIDMANN:  Ms. Mulan did distribute
21    decisions on the objection as to the record.
22              THE COURT:  Right, right.
23              MS. WEIDMANN:  So I think there is still
24    the outstanding issue of the objection to the
25    testimony by Officer Sanchez.
```

PROCEEDINGS                                                  14

```
 1              THE COURT:  Okay.  So put it on for
 2   continued fact finding.  And permanency hearing.  Yes
 3   Ms. Delane?
 4              MS. DELANE:  One last thing, Your Honor.
 5              THE COURT:  Yes.
 6              MS. DELANE:  [Background Noise] the
 7   graduation is soon.  And I realize that the order by
 8   the agency might not exercise a discretion for
 9   unsupervised visits.  But then I'd ask that Ms.
10   Bridgeforth be permitted to attend.  It's her
11   preschool graduation.  I just wanted to make sure if
12   it's an issue with anyone.
13              THE COURT:  Okay.
14              MS. VERILLO:  I mean I know that Ms.
15   Bridgeforth previously had visits that were
16   supervised by the foster parent.  So I would assume
17   that with the foster parent present that in itself
18   should not be--
19              MS. DELANE:  [Interposing] Okay.
20              MS. VERILLO:  --an issue.
21              THE COURT:  Okay.
22              MS. VERILLO:  But if it is, I'll email
23   counsel and--
24              THE COURT:  [Interposing] Okay.  Okay.  And
25   so everybody just in terms of the excited utterance,
```

PROCEEDINGS                                                                  15

1   I'm--I would hold that the statement testified to by
2   the police officer on the prior trial date was not an
3   excited utterance. I think that in many ways it's a
4   close case. There are many factors. If they were
5   slightly different, would have created this, would
6   have allowed the Court to hold that this is an
7   excited utterance. However, as the Courts in New
8   York State have held, the Courts consider numerous
9   factors in determining whether or not a statement is
10  made should qualify as an exception to the hearsay
11  rule. And just generally speaking, it must be that
12  at the time the utterance was made, the declarant was
13  under the stress of excitement caused by an external
14  event, sufficient to still his reflective facilities.
15  Thereby preventing opportunity for deliberation which
16  might lead the declarant to be untruthful. Just
17  citing Richardson on evidence and the Courts have
18  looked at a number of different factors in
19  determining whether or not a statement in any
20  particular case is an excited utterance. The
21  decisive factor has been held to be whether or not
22  the surrounding circumstances reasonably justify the
23  conclusion that the remarks were not made under the
24  impedance of studied reflection. There are too many
25  holes in the narrative provided to the Court to allow

PROCEEDINGS                                                      16

```
 1     this Court to make the determination that the
 2     declarant statement to the police officer or the
 3     declarant statement to the operator was an excited
 4     utterance.  One thing we don't have the 911 tape.
 5     Didn't have the ability to determine the impact on
 6     the declarant, whether the declarant was in fact or
 7     appeared in fact to be excited, upset, under the
 8     influence of the startling event.  Additionally, it's
 9     not clear to me from the record, the officer
10     testified that he spoke with the declarant
11     approximately 15 minutes after the phone call.  But
12     it's not completely clear to me what the event or
13     condition is in the instant case that is being
14     purported to be the startling or exciting event.
15     It's suggested that the declarant was held against
16     her will.  And if the Court attempted to examine all
17     of the surrounding circumstances, it would look to
18     the evidence that was recovered in the apartment.
19     And according to the declarant, the declarant was
20     tied up.  There was no evidence to show that, there
21     is no physical evidence to show that the declarant
22     was in fact tied up.  The child's statements,
23     although vaguely suggestive of possibly observing--I
24     believe the child said that men and women came to the
25     house.  They dressed up.  Women wore high heels.
```

PROCEEDINGS                                      17

1   They partied. I think she said that she observed
2   somebody to be tied up. And but the question is
3   whether this is an excited utterance and again, the
4   woman made the phone call. We don't know who the
5   woman is. We don't know what the event is that led
6   to the phone call. We don't know what the event is
7   that happened. I understand everybody's very upset
8   and disagrees with me very much. So you'll you know
9   avail yourself in whatever you believe to be the
10  appropriate avenues for appeal. Again, cases have
11  held that it's not--it's not necessary that there be
12  independent evidence of what was the exciting event.
13  And many other state courts have held that the
14  startling event or condition may be proved by
15  circumstance evidence. And as an example, the Court
16  find in Illinois case, it's an Illinois murder case,
17  People v. Leonard, in that case as an example of the
18  Court inferring the nature of the startling event or
19  condition, and allowing it to be proved by
20  circumstantial evidence, in that case the Court
21  approved the admission of testimony from a witness.
22  That at approximately 1:00 a.m. in the morning, the
23  crime victim made a telephone call and said, "He's
24  got a gun." And in that case, although the phone
25  call didn't provide detail about the underlying

PROCEEDINGS                                                                   18

1   incident and what actually took place there, three
2   other witnesses were called to testify that at
3   approximately 1:00 a.m. that evening, they saw the
4   victim and the defendant emerged from the lobby of a
5   building struggling over the possession of a handgun.
6   And the struggle resulted in the death of the victim.
7   And in that case is 83 Illinois 2nd, 411.  In this
8   case, there is no such corroboration to explain or
9   describe or fill out or establish the underlying
10  crime that was taking place.  We don't have the
11  witness of the--we don't have the testimony of the
12  declarant which and of itself is not dispositive.
13  But we here we don't have that.  We don't have the
14  911 tape and which again is not in and of itself
15  dispositive.  But we don't have it.  We don't have
16  any other witnesses who said they observed anything
17  like--we have a child's statement that somebody at
18  some point was tied up.  But there are just too many
19  inferences that are required in this case for this
20  Court to conclude that the statement provide--the
21  statement provided by the declarant was of sufficient
22  particularity and that she provided sufficient detail
23  for the Court to conclude that there was sufficient
24  circumstantial evidence about the startling event or
25  the condition.  And it's not clear what that was.

Ubiqus/Nation-Wide Reporting & Convention Coverage
61 Broadway – Suite 1400, New York, NY 10006
Phone: 212-346-6666 * Fax: 888-412-3655

PL000177

PROCEEDINGS                                                          19

```
 1        Was it that she was tied up?  If so, when did that
 2        happen?  We don't know.  And again, time in and of
 3        itself is not enough to create or destroy an excited
 4        utterance.  Here we believe it's 15 minutes.  But 15
 5        minutes from when to when?  15 minutes from a phone
 6        call until the arrival of the police.  But again,
 7        it's not clear what happened before the phone call.
 8        It's just clear that the phone call was made.  And
 9        again, anyone can look at the testimony that was
10        provided here and deduce what they think happened or
11        draw conclusions that it looks like a whole host of
12        different things happened.  But it's the view of this
13        Court that there was not sufficient evidence
14        regarding the circumstances surrounding the alleged
15        victim's circumstances and the event that occurred or
16        the event that led to the excited or spontaneous
17        declaration.  And although it appears there may be a
18        prima facie case established based on another element
19        of neglect, here I don't find an excited utterance.
20        So I note everybody's objection.  I know that the
21        attorney for the child did an enormous amount of work
22        on this.  And it was extremely helpful and
23        informative.  But again as I said if many different--
24        there is a multitude of evidence that could have been
25        presented here that would have led to a different
```

Case 1:16-cv-00273-WHP-SDA   Doc #: 98-39   Filed 03/03/18   Page 9 of 9 Page ID #: 1552

PROCEEDINGS                                                    20
Confidential Material

1   conclusion. And that it could have been any other
2   evidence that was discovered in the apartment that
3   served to corroborate any other evidence about what
4   happened before the call was made. And before that.
5   And while none of the individual factors alone, lack
6   of a 911 tape, lack of a second witness, lack of
7   information about the surrounding circumstances, lack
8   of connection between the alleged crime and the time
9   it took to make the telephone call, it's the Court's
10  view that collecting all--that viewing all of that,
11  all of those factors cumulatively render it
12  inappropriate to find the declarant statements to be
13  an excited utterance. And I note everybody's
14  objection and I know Ms. Verillo you said you would
15  then decide if you're going to call another witness
16  or what you're going to do. So then I don't know if
17  you want to have further discussion or I know that
18  you just--I think on the witness and exhibit list I
19  think there is my recollection is there was the one
20  police officer I think and the caseworker, I think.
21           MS. VERILLO:  That is correct.
22           THE COURT:  Okay.
23           MS. VERILLO:  And I would ask though in,
24  you know, I have taken into what the Court's decision
25  and--

Ubiqus/Nation-Wide Reporting & Convention Coverage
61 Broadway – Suite 1400, New York, NY 10006      PL000179
Phone: 212-346-6666 • Fax: 888-412-3655