

POLICE DEPARTMENT

May 8, 2017

Honorable Bill de Blasio
Mayor of the City of New York
City Hall
New York, NY 10007

Honorable Melissa Mark-Viverito
Speaker
The New York City Council
250 Broadway, 18th Floor
New York, NY 10007

Honorable Mark G. Peters
Commissioner
New York City Department of Investigation
80 Maiden Lane
New York, NY 10038

Honorable Philip K. Eure
Inspector General
Office of the Inspector General – NYPD
80 Maiden Lane
New York, NY 10038

Dear Mayor de Blasio, Speaker Mark-Viverito, Commissioner Peters, and Inspector General Eure:

Pursuant to Local Law 70 and the New York City Charter, the New York City Police Department ("NYPD") hereby submits its response to the February 7, 2017 Report of the Office of the Inspector General for the NYPD ("OIG") entitled "Addressing Inefficiencies in NYPD's

Handling of Complaints: An Investigation of the 'Outside Guidelines' Complaint Process" ("Report").

### Introduction

The NYPD thoroughly and diligently investigates a variety of complaints involving the conduct of both uniformed and civilian personnel. The complaints, generated from sources both inside and outside of the NYPD, range from serious allegations of criminal conduct to relatively minor administrative infractions of the Department's rules and procedures. The NYPD's gateway for the receipt of all complaints is the Internal Affairs Bureau ("IAB"). Once received by IAB, an allegation is assessed and then assigned to the appropriate investigative unit within the NYPD.

A claim that a civilian or uniformed member violated Department rules or procedures is referred to the NYPD's Investigation Review Section ("IRS"), a unit within the Office of the Chief of Department ("OCD"). This unit is responsible for ensuring that each complaint it receives, no matter how minor in nature, is fully investigated and resolved. These investigations are commonly referred to as "Outside Guidelines" or "OG" investigations. The most common OG complaints include allegations that a parking or traffic summons was improperly issued, that an officer failed to make a formal report of a crime after speaking to a member of the public, or that an officer made an improper arrest. If a member of the NYPD is found to have violated Department guidelines, he or she faces consequences ranging from a verbal reprimand and instruction to formal administrative charges. In this sense, for both the complainant and the subject of the allegation, an OG case is significant.

The NYPD appreciates OIG's comments and recommendations regarding the processing of OG complaints. However, well before the issuance of OIG's report, the NYPD had focused on

2

most, if not all, of the issues raised by OIG. Indeed, as early as January 2014, almost three years before OIG's Report, the NYPD had begun its evaluation of the IRS's handling of OG complaints. As described in more detail below, prior to OIG's investigation, the IRS had undertaken measures to improve the efficiency and quality of OG investigations. Because most of OIG's present recommendations are consistent with the NYPD's previously contemplated plans for improvement, the NYPD concurs with nearly all of them.

### NYPD's "Outside Guidelines" Complaint Process

IAB receives all allegations of corruption, serious misconduct, and non-criminal violations of Department rules and regulations. Allegations can be made against both uniformed members of the Department as well as civilians.[1] Complaints are received from members of the public ("external complaints") as well as from NYPD's uniformed and civilian employees ("internal complaints"). Upon intake, IAB assigns a unique log number to every complaint. IAB's Assessment Intake Unit then determines whether the specific complaint should be investigated as one of the following: (1) a corruption case, (2) a misconduct case, or (3) an outside guidelines case. If a complaint includes one or more allegations of excessive force, abuse of authority, discourtesy or use of offensive language, those allegations will be referred to the Civilian Complaint Review Board[2] ("CCRB") for investigation. All other allegations are investigated by the NYPD, although some corruption and serious misconduct cases are jointly investigated by the NYPD and a federal or state prosecutor's office.[3]

---

[1] The NYPD has approximately 36,000 uniformed personnel and 18,000 civilian employees.
[2] The Civilian Complaint Review Board is an independent New York City agency established pursuant to New York City Charter Chapter 18A. It investigates complaints of excessive force, abuse of authority, discourtesy or use of offensive language against New York City police officers, makes findings, and recommends specific disciplinary action to the Police Commissioner.
[3] An exception to this general rule is made for some misconduct and OG cases which are handled by a Borough Inspections Unit. A Borough Inspections Unit is a unit within a Patrol Borough Command that is assigned cases for

3

OG cases involve an allegation that a member of the NYPD has violated a Department rule or guideline. For tracking purposes, IAB classifies OG allegations into several general categories. Many OG allegations are classified under a catch-all category known as *"Other Department Rules/Procedures Violation,"* which constitutes 18% of all OG cases. Examples of infractions within this category include: Improper Parking of a Department Vehicle, Misuse of Parking Plaque, and Damage to Police Property. The second largest category of OG cases, constituting 6.9% of OG cases, is *"Failure to Take/Make a Report,"* followed by *"Disputed Summons – Parking,"* (5.5%) and *"Disputed Summons – Traffic*[4]*"* (4.2%). Those allegations that fall under the heading of *"Failure to Take/Make a Report"* generally include a claim by a member of the public that the officer failed to take a report of an incident that the complainant believes amounts to a criminal offense. The *"Disputed Summons"* categories involve claims by members of the public that an officer issued a summons without a factual basis.

Once IAB's Assessment Intake Unit determines that an allegation should be investigated as an OG case, IAB forwards the allegation to IRS for processing and assignment. IRS then determines which command within the NYPD will investigate the case. Because the vast majority of OG allegations are made against uniformed officers assigned to the Patrol Services Bureau,[5] most OG cases are assigned by IRS to the Office of the Chief of Patrol's Investigation and Evaluation Unit. That unit, in turn, usually forwards the OG complaint to one of the eight Patrol Borough Commands. The eight Patrol Borough Commands are Patrol Borough Manhattan North (PBMN), Patrol Borough Manhattan South (PBMS), Patrol Borough Brooklyn North

---

investigation by the Office of the Chief of Department or the Chief of Patrol. Many of the cases that the Borough Inspections Unit investigates involve off-duty conduct by police officers.

[4] It should be noted that in its Report, the OIG-NYPD appears to blend *"Disputed Summons-Parking"* and *"Disputed Summons-Traffic"* and create their own category of *"Contested Summonses."*

[5] If an allegation is made against an officer that is assigned to the Housing or Transit Bureau, IRS forwards the allegation to either the Housing or Transit Bureau's Investigation and Evaluation Unit. From there, the case will usually be forwarded to the Transit District or Police Service Area where the claim arose.

(PBBN), Patrol Borough Brooklyn South (PBBS), Patrol Borough Queens North (PBQN), Patrol Borough Queens South (PBQS), Patrol Borough Bronx (PBBX) and Patrol Borough Staten Island (PBSI). When received, a Patrol Borough command will typically assign the OG case for investigation to a supervisor in the precinct where the allegation arose, although occasionally, the Patrol Borough command may retain and investigate the case.

Once an OG allegation reaches the precinct where it arose, the precinct's Operations Lieutenant assigns it to a precinct supervisor, usually a sergeant, for investigation. The supervisor/investigator follows an investigative protocol outlined in the *Disposition and Penalty Form for Outside Guidelines Communications*, a document that is distributed by IRS with each allegation to be investigated. The investigative protocol includes: (1) an interview of the complaining witness, (2) an interview of the subject officer and any other officers with relevant information, (3) a review of relevant Department records if necessary, and (4) a review of other evidence that is relevant in the opinion of the supervisor/investigator, such as video footage or statements of additional witnesses. At the conclusion of the investigation, the supervisor/investigator makes a determination of the merits of the allegation and must inform the complainant, if available, of the outcome. These investigative steps are documented on the *Disposition and Penalty Form for Outside Guidelines Communications*.

As noted, the investigative protocol includes the requirement that an interview with the complainant be conducted. Moreover, the assigned supervisor must make all reasonable efforts to do so even if the complainant is uncooperative. In its Report, OIG erroneously states that at the beginning of an investigation, the supervisor/investigator must send his or her contact information by registered mail to the complainant and keep the case open for a period of ten days after receiving the return receipt. In fact, the supervisor/investigator sends a letter via registered

mail to the complainant only *after* three failed attempts at establishing contact. Even then, the complainant is afforded ten full days to respond from the date on which the return receipt is received by the investigator before a determination is made that the complainant is unavailable or uncooperative.

In the case of complaints against police officers assigned to a precinct, each completed investigation is reviewed in the precinct by an executive at the rank of a Captain or above. From the precinct, it is forwarded up the NYPD's established chain-of-command, first to the Patrol Borough and then to the Patrol Services Bureau.[6] At each level, the investigation must receive executive approval. If the investigation is found to be deficient or incomplete, it is returned to the precinct for further action and is then forwarded up the chain-of-command a second time for the requisite approvals. Each executive approval is noted on the *Disposition and Penalty Form for Outside Guidelines Communications.*

Once all required approvals are obtained, the case is returned to IRS where it undergoes a final review to ensure that all the necessary investigative steps were taken. If not, IRS sends a Corrective Action Letter to the investigator/supervisor instructing him or her to make necessary additions or corrections. Ultimately, when an investigation is fully completed and fully reviewed, IRS enters information from the Disposition and Penalty Form for Outside Guidelines Communications into a computer program known as Computer Aided Tracking System (BCATS)[7].

Because this system relies on the hard copy Disposition and Penalty Form, the entry of the information into BCATS is often done well after the investigation is completed and

---

[6] For OG cases originating in a Housing Police Service Area or a Transit District, the case is approved by the Housing Bureau or the Transit Bureau.
[7] The computerized tracking system is known as "BCATS" because it is the second, or "B" version, of the original CATS system.

6

approved. This delay is due to the necessity of delivering a paper form through the above described process. The NYPD is confident, however, that the delay will be remedied by NYPD's plan to computerize IRS's case tracking system as more fully described below. This technological advance is presently underway and will significantly streamline the process. Moreover, it will address the concerns raised by OIG's report, by enabling IRS to provide prompt and accurate updates of the investigation's progress to inquiring complainants

In its Report, OIG states that it fielded "calls and inquiries" from members of the public who alleged that the NYPD failed to provide them with status reports of the investigation of their OG complaints. When asked, OIG refused to provide the total number of individuals who voiced this complaint, stating only that the total was "more than ten" in an approximate two and one-half year period from mid-2014 to late 2016.

The NYPD is sensitive to the need for positive interaction with the communities that we serve. In an effort to understand and determine precisely what occurred during the processing of these cases, as well as to evaluate whether additional interim quality control measures are necessary to ensure that prompt, accurate, and complete information is provided to complainants, the NYPD requested that OIG provide the Department with an accurate number of the complaints that they received as well as the case numbers pertaining to such cases. With this information, the NYPD would be able to conduct their own review to determine what had occurred with each of the complainant's investigations. It should be noted that the NYPD was not asking OIG to provide the identity of the individuals who experienced difficulty obtaining information as those individuals had previously provided their names and contact information to

7

the NYPD in course of making the underlying OG complaint. Inexplicably, OIG refused to identify all but three cases.[8]

NYPD's review revealed that in all three identified cases, the allegations were thoroughly investigated. The complainants were contacted and interviewed on multiple occasions. Moreover, in two of the three cases, the complainants' allegations were investigated not once, but several times. Significantly, two of the three cases resulted in the outcome that the complainants sought. In the third case, complainant tried to leverage a plainly unprovable allegation to obtain material benefits in the form of Broadway show tickets, metro cards, and expenses for dining and travel. To the extent that any of these complainants experienced difficulty in learning of the status of their claims, the NYPD is confident that the anticipated computerized case tracking system for OG cases, more fully described below, will address such concerns in the near future.

One of the identified cases involved a complainant with a lengthy criminal history who had made over 20 complaints to CCRB regarding the NYPD. In addition, by the complainant's own estimation, he/she[9] had made 25 complaints to IAB and had also made an unspecified number of complaints to "City Hall." NYPD records also indicate that from 1985 through 2011, the complainant was arrested 19 times. In the OG case at issue, it was alleged that an officer failed to take a report when the complainant was assaulted on a subway train. The review of the case file revealed that the complainant received the precise outcome that he/she sought. Indeed,

---

[8] OIG's refusal is inconsistent with the spirit of cooperation and collaboration that should characterize the relationship between the two agencies, especially given OIG's statutorily imposed goal of "enhancing the effectiveness of the department" and "increasing the public's confidence in the police force, thus building stronger police-community relations." Charter of the City of New York, Chapter 34, §803(c)(1).

[9] It is the NYPD's policy to preserve the confidentiality of the identity of a complainant or witness who provides information in connection with this process. The non-specific pronoun "he/she" is therefore utilized in this response.

8

shortly after the OG complaint was made, detectives arrested the individual that the complainant identified as having committed the offense.

In the second case, the complainant alleged that an officer who issued a traffic summons refused to provide his name and shield number when the complainant asked for this information. The case file reveals that the allegation was fully investigated, was substantiated and that the subject officer, a Traffic Enforcement Agent, ("TEA") was given instruction to remedy his omission. Specifically, the TEA was reminded that, under the circumstances presented in the OG case, the NYPD's clear policy is that an officer must provide his or her name and shield number to a member of the public when requested.

In the third case, the complainant made numerous complaints to CCRB and IAB from 2012 through early 2016 relating to his/her arrest for Theft of Service in Penn Station. The complainant alleged that he/she had been racially profiled and subjected to brutality. In making this claim, the complainant provided strange details about the encounter, including describing four unidentified officers in black uniforms with black and gold shields and wearing "military style" hats. More importantly, the complainant was unable to provide a date, or even a consistent time frame, for the incident, claiming it occurred on August 18, 2012, in "August of 2012," in "mid-August of 2012," and in "August 2013." The underlying complaint was nevertheless thoroughly investigated as were additional complaints that the original complaint had been improperly investigated. The complainant was repeatedly contacted and interviewed throughout these multiple OG investigations.

For the time period that the complainant provided, the supervisor assigned to investigate the case conducted thorough database checks to ascertain if during 2012 or 2013, the

9

complainant was arrested by the NYPD, the Metropolitan Transit Authority, or the Amtrak Police Department.[10] All queries yielded negative results indicating that no such arrest occurred. The complainant was informed of the result of the investigations. The complainant nevertheless repeatedly renewed this allegation and in late 2015 began demanding "compensation" from the NYPD, first in the form of tickets to a Broadway show, and then expenses for shopping, meals at restaurants, metro cards and travel for both the complainant and the complainant's family. These demands were made to CCRB, IAB, the Commanding Officer of the 34th Precinct and the press office at City Hall.[11] The demands were, of course, denied.

**OCD/IRS's Self-Initiated Improvements**

OIG's Report suggests that its investigation was instrumental in uncovering deficiencies in the NYPD's OG complaint process and in fashioning appropriate remedies for these shortcomings. In reality, well in advance of OIG's investigation and Report, the NYPD's current OG complaint process had undergone a comprehensive in-house evaluation of its efficiency that resulted in the adoption of a number of corrective measures. Beginning in 2014 and continuing to the present, IRS made the following self-initiated improvements:

- **Executive Review of the Processing of OG cases.** Prior to 2014, most OG cases were reviewed by the subject officer's supervisors, usually a Sergeant or Lieutenant, in the assigned precinct. In contrast, since 2014, the summary of the investigation and the recommended result is reviewed not only by the subject officer's supervisor but also by the precinct's commanding officer or executive officer. It is then reviewed by supervisors at the borough and bureau levels. Finally, IRS conducts its own review. These multiple layers of review are designed to ensure that the immediate supervisor conducting an investigation of one of his or her subordinates is not the final arbiter of the disposition. OIG fails to fully consider this multi-level executive review system when it suggests that

---

[10] Each of these agencies plays a role in law enforcement in Penn Station.

[11] At one point, after these inappropriate demands were rebuffed by the NYPD, the complainant bizarrely sought the assistance of the Department in contacting the state Attorney General's office and the media for assistance in obtaining this compensation. Several of these requests relating to compensation were included in long rambling emails.

10

there is some infirmity or impropriety in assigning immediate supervisors to conduct an OG investigation.[12]

- **Creation of the Mandatory OG Disposition and Penalty Form.** In 2014, the Commanding Officer of IRS designed and implemented a new mandatory form to capture information regarding investigative measures taken, the recommended disposition, and to record the required levels of executive review. Notably, the new form, known as the *Disposition and Penalty Form for Outside Guidelines Complaints*, also requires that the assigned investigator document his or her contact with the complainant and reminds the investigator to send the complainant a certified letter when the investigator is unable to make contact. Prior to its introduction, OG investigations were generally summarized in the form of a memorandum, the content of which would vary depending on the supervisor/investigator and the command to which the investigation was assigned.

- **Increase in trained staff.** In its Report, OIG refers to IRS's "small staff"[13] as one of the reasons for delays in completing investigations in a timely manner. Yet, as a result of the NYPD's internal assessment, there are now ten individuals assigned to IRS, all of whom are fully trained and devoted to processing OG cases. The team consists of one Lieutenant, one Sergeant, four officers, and four civilian staff.

- **Identification of need for new database system.** Years before the release of OIG's Report, the NYPD had identified the need for an upgraded computerized case-tracking system to improve the efficiency in case management, investigation, and overall processing. IRS concluded that replacing their outdated BCATS database with an expansion of the Internal Case Information System (ICIS), the case tracking system utilized by IAB would serve this purpose. Due to other Department priorities, this upgrade was initiated in January 2017 and is presently underway.

Thus, years prior to the issuance of OIG's Report, the NYPD had already identified shortcomings in its investigative process and case management system and had taken proactive steps to address them. At the initiative of the Commanding Officer of IRS, interim solutions to increase the efficiency and expediency in the processing of OG cases have been established. These efforts clearly demonstrate that the NYPD is committed to diligently investigating OG allegations and communicating their ultimate dispositions to complainants in an accurate and timely manner.

---

[12] See OIG Report, page 6, Footnote 6.
[13] See, OIG Report, page 10.

11

## NYPD'S RESPONSES TO OIG-NYPD'S RECOMMENDATIONS

RECOMMENDATION #1:

**NYPD should update and unify the computer systems it uses to track and manage OG cases by upgrading OCD/IRS from BCATS to ICIS (or an ICIS compatible system). Along with developing advanced analytics capabilities and ICIS integration, NYPD should consider other features that would streamline the OG process, such as using electronic forms and signatures, employing electronic notifications to remind borough and local command staff to complete investigations and submit their findings, and maintaining electronic logs to document investigative actions taken. (As noted, NYPD has recently indicated that an upgrade of the BCATS system will begin in early February 2017).**

NYPD RESPONSE:

The NYPD was well on its way to fully implementing this recommendation prior to OIG-NYPD's Report. As indicated above, years before the issuance of the Report, the NYPD identified the limitations of the present case tracking system, BCATS, and the need to upgrade and replace it with an expansion of IAB's case tracking system, ICIS. Funds were specifically earmarked for this project and, as of January 2017, the vendor commenced work to expand the system for IRS's use. The new system is expected to have several of the features that OIG references in its recommendation, including electronic forms and signatures, as well as an electronic history of investigative steps taken. The fully instituted system is projected for late Fall 2017.

The vendor that is presently working on the technological alterations to expand ICIS would have begun work on this project before January 2017 but was also tasked with other time-sensitive projects for the Department. Because this vendor is highly qualified and under contract to provide technological services to the Department for a variety of updates and needs, it would not

have been fiscally responsible to seek a separate contract with another vendor. Among these other priorities was the revision of the Department's Domestic Incident Report ("DIR") system. The DIR is a standardized form mandated by the New York State Executive Law. The NYPD is required by law to complete such a form for every report of a crime or offense between members of the same family or household, whether or not an arrest is made. Recently, the state's Division of Criminal Justice Services mandated changes to the DIR that required the Department to amend its existing form by April of 2016. This project was, therefore, time-sensitive.

Another competing project resulted in increased public safety. This project involved the consolidation of data from electronic investigative case management systems that existed among different investigative units in the Department. As a result, patrol officers are now able to access accurate and reliable information on their smartphones to determine if an individual is wanted in connection with an ongoing investigation.

## RECOMMENDATION #2:

**NYPD should establish a uniform timeframe for completing OG investigations and a uniform system of tracking due dates.** Setting standard deadlines would benefit both subject officers/staff and the public by bringing greater clarity and predictability to the timeframe in which the complaint investigation process should be completed.

## NYPD RESPONSE:

The NYPD accepts this recommendation and expects that the new tracking system will provide the capability to track the status of investigations and ensure compliance with IRS's present requirement to complete an investigation in no more than 90 days. Further, the new tracking system includes an alert that is automatically triggered when an investigation in an assigned case at the precinct level has not been undertaken. The alert, which will occur within

the first 30 days, will remind the assigned investigator/supervisor, as well as precinct executives, that the case must be addressed.

In addition, it is expected that supervisor/investigators and precinct executive officers will routinely employ the new system's tracking and analytical functions that enable them to easily generate a list of assigned OG investigations that are not yet completed after a specified time period. Such a check could be conducted, for example, to obtain a list of not yet completed investigations that are thirty or forty-five days old. The supervisor/investigator can prioritize his or efforts based on these results. Precinct executive officers can address the cause for the delay and ensure that a given investigation is promptly completed. Given all of the above, the NYPD expects that the expansion to the ICIS system will ensure that OG investigations are completed in 90 days.

RECOMMENDATION #3:

**If an OG investigation has not been completed within 90 days, the assigned supervising investigator should be required to request an extension from OCD/IRS in writing, stating the reason for this request.** IRS should hold supervising investigators accountable for the timely completion of an investigation. Placing the request for an extension in writing will allow supervising investigators to document a reasonable justification for the delay or allow the IRS staff to identify the cause of any unnecessary delays.

NYPD RESPONSE:

The NYPD's current practice and procedure already requires that an investigation be completed within 90 days. With the new system, NYPD anticipates that investigators will have little difficulty in meeting this requirement, especially given the features described in the response above. In addition, the NYPD expects that the new electronic system will drastically

reduce or eliminate the significant delays that are caused by the physical transfer of a paper form from one geographic location to another within the Department. Moreover, in the new electronic system, IRS will instantaneously deliver an OG investigation directly to the precinct, eliminating the present procedure of sending the case down through the chain-of-command for assignment. The multi-level executive review of the completed investigation will be retained.

Finally, in addition to the alert function detailed in NYPD's response to Recommendation #1 above, the new system also includes a second alert that occurs closer in time to the 90 day deadline. For all of the above reasons, the NYPD is confident that few, if any, investigations will require more than 90 days to complete. In the event that a case is not completed within the deadline, IRS will address those instances on a case-by-case basis.

RECOMMENDATION #4:

**NYPD should revise the current OG Disposition and Penalty Form to include a box denoting the case's due date as well as a date section for each stage of the investigation.** Clearly recording and tracking due dates at all stages of the OG process would allow command staff to monitor the timeliness of OG investigations and ensure that each case is completed in a reasonable amount of time.

NYPD RESPONSE:

The NYPD accepts this recommendation in principle. However, the paper OG Disposition and Penalty Form will be obsolete once the updated computerized system becomes operational. Instead, the form's entries will be made directly into ICIS. As with any case report, a date will be required when memorializing an event in the investigation. Given the present guidelines that require an investigation to be completed within 90 days from the date of the

15

complaint,[14] and all of the previously described time-saving features of the new system, the NYPD feels that there is no need to assign a specific due date on a form when a case is opened.

### RECOMMENDATION #5

**NYPD should implement a web-based procedure for communicating the status and results of externally-generated OG investigations back to the community members who filed the complaints.** Currently, if a case is investigated by IAB or diverted to the precincts as an OG case, complainants have no ability to check the status of their complaint online. In contrast, a complainant can enter a complaint number online to track the status of a case being investigated by CCRB. NYPD should implement a mechanism similar to the one currently employed by CCRB on its website.

### NYPD RESPONSE:

The NYPD declines to accept this recommendation at this time. Upon implementation of the new system, the NYPD envisions that the new central depository database will cure any issues related to case status updates. Further, the expansion of ICIS will allow for cases to be assigned to investigators at a much quicker pace. This will address the issue of delay in contacting the complainant as well as the issue of there being no consistent point of contact for the complainant to receive updated information. IAB and IRS will have immediate case information available to them through the computerized system and can serve as a central point of contact for complainants wishing to learn the status of a case.[15]

---

[14] See, NYPD Administrative Guide, Investigation of Civilian Complaints, Section: Disciplinary Matter, Procedure No.: 318-01, Page 2
[15] Although IRS will be able to view non-IAB cases, it will be unable to view confidential IAB cases.

RECOMMENDATION #6:

NYPD should publish quarterly reports on OG complaints. NYPD already publishes monthly complaint comparison reports for all Corruption and Misconduct cases. Once a new computer system is in place to facilitate the efficient tracking and analysis of OG cases, NYPD will have the capacity to accurately report the number, type, disposition, geographic distribution, demographic characteristics, investigative duration and other trends concerning OG cases. This information should be published on a quarterly basis so that policy-makers and the public have the ability to make accurate and informed assessment of the OG investigative process.

NYPD RESPONSE:

NYPD will take this recommendation under consideration pending review and evaluation of the new system once it is implemented.

CONCLUSION

The NYPD has a dedicated staff committed to the efficient and diligent handling of OG complaints. Furthermore, the Department envisions that the implementation of its new computerized case tracking system will further expedite the processing of these investigations, allow for a central point of contact for complainants wishing to know the status of their case, and serve to deepen the connection and trust between the NYPD and all of the communities we serve.

Very truly yours,

*Lawrence Byrne*

Lawrence Byrne
Deputy Commissioner Legal Matters

17