**FEBRUARY 2017**

# ADDRESSING INEFFICIENCIES IN NYPD'S HANDLING OF COMPLAINTS: AN INVESTIGATION OF THE "OUTSIDE GUIDELINES" COMPLAINT PROCESS

**NEW YORK CITY DEPARTMENT OF INVESTIGATION**
OFFICE OF THE INSPECTOR GENERAL FOR THE NYPD (OIG-NYPD)



**MARK G. PETERS**
COMMISSIONER

**PHILIP K. EURE**
INSPECTOR GENERAL FOR THE NYPD

## Table of Contents

I.      Executive Summary ........................................................................................... i
II.     Introduction ..................................................................................................... 1
III.    Methodology ..................................................................................................... 2
IV.     The Process of Handling OG Cases ................................................................. 5
V.      Key Findings .................................................................................................... 10
        A.  Process Inefficiencies ............................................................................ 10
        B.  Incompatible and Outdated Electronic Systems ................................. 11
        C.  Inconsistent Due Date and Record Keeping Protocols ........................ 12
        D.  Funding Available for Necessary Upgrade ........................................... 12
VI.     Recommendations ........................................................................................... 14
VII.    Appendix  ........................................................................................................ 16

# ADDRESSING INEFFICIENCIES IN NYPD'S HANDLING OF COMPLAINTS: AN INVESTIGATION OF THE "OUTSIDE GUIDELINES" COMPLAINT PROCESS

## I.    Executive Summary

The Internal Affairs Bureau (IAB) of the New York City Police Department (NYPD or "the Department") is responsible for investigating allegations of corruption and other serious misconduct committed by NYPD police officers and staff. In its complaint intake function, IAB categorizes the allegations made against police officers – whether stemming from public complaints or internally-generated within the Department – according to their seriousness. IAB refers less severe allegations to command-level investigators within NYPD. NYPD refers to this less severe group of complaints against officers as "Outside Guidelines" (OG) cases because, if proven, the behavior falls outside the Department's own Patrol Guide rules. OG cases account for approximately 50% of the tens of thousands of complaints that IAB registers each year. In 2015, 26,133 complaints were classified as OG cases.

The Department of Investigation's Office of the Inspector General for the NYPD (OIG-NYPD) has fielded calls and inquiries from members of the public who are frustrated that NYPD cannot provide an update on the status of their complaints against officers. Although supervising investigators in NYPD are required to attempt to make contact with complainants during the course of these investigations, members of the public are sometimes unable to learn the status of their case because NYPD's Office of the Chief of Department's Investigation Review Section (OCD IRS), which coordinates these cases, cannot easily track and locate OG cases once they are sent to the commands for investigation. This is a significant concern because it impedes NYPD's ability to respond to community needs and concerns, and has the potential to erode public confidence that NYPD is investigating and addressing complaints efficiently and effectively. Furthermore, police officers and NYPD staff who are the subject of OG complaints also experience prolonged uncertainty when cases drag on, potentially eroding morale.

Accordingly, OIG-NYPD investigated how NYPD tracks OG cases as they move from IAB to OCD IRS, to borough and local commands, and back. OIG-NYPD's review of this process – both at a centralized and localized level – found certain inefficiencies, inconsistencies, and outdated technology that is incompatible with other NYPD systems.

OIG-NYPD's investigation of NYPD's handling of OG cases led to the following findings:

➢ NYPD's OCD IRS, the unit responsible for processing OG cases, is currently using an outdated system to store data and refer OG cases to local investigative units. This system lacks tracking and analytic capabilities, rendering the Department unable to identify potential problems and determine the status of cases efficiently.

➢ Supervising investigators rely on paper forms to complete OG investigations. These paper forms must be mailed to different commands for approval and eventually back to OCD IRS, lengthening the time it takes to review and resolve an OG case. Additionally, this reliance upon paper forms and traditional mail risks the possibility of documents being misplaced or lost.

➢ Although OCD IRS expects to receive case dispositions from local-level investigators within approximately 90 days, internal deadlines for completing an OG investigation vary across commands. Additionally, there is no uniform system of tracking due dates for OG cases.

➢ NYPD's OCD IRS staff are cognizant of the shortcomings of their electronic tracking system and have made adjustments over the past three years in an effort to improve the process. Indeed, OCD IRS staff have themselves asked the Department to view the needed upgrade as a priority.

➢ During the final stages of OIG-NYPD's investigation, the Department indicated that, in February 2017, it will begin to implement the necessary technological upgrade as identified by OCD IRS staff and as recommended by OIG-NYPD in this Report.

Based on these findings, OIG-NYPD recommends that NYPD take the following steps to improve its investigation and processing of OG cases:

1. **NYPD should update and unify the computer systems used to house OG cases by upgrading OCD IRS from the Computer Aided Tracking System (BCATS) to the Internal Case Information System (ICIS) that IAB uses, or to an ICIS-compatible system.** (As noted, NYPD has recently indicated that this upgrade will now begin in February 2017, with a new system expected to go live in November 2017.)

2. **NYPD should establish a uniform timeline for completing OG investigations and a uniform system for tracking due dates.**

3. **If an OG investigation has not been completed within 90 days, the assigned supervising investigator should be required to request an extension from OCD IRS in writing, stating the reason for this request.**

4. **NYPD should revise the current OG disposition form to include a box denoting the case's due date as well as a date section for each stage of the investigation.**

5. **NYPD should implement a web-based procedure for communicating the status and results of externally-generated OG investigations back to the community members who filed the complaints.**

6. **NYPD should publish quarterly reports on Outside Guidelines complaints with a particular focus on measuring the average duration of OG investigations and presenting summary statistics on the dispositions of these complaints.**

## II.    Introduction[*]

When a member of the public in New York City believes that a police officer, supervisor, or staff member of the New York Police Department (NYPD or "the Department") has acted inappropriately, that person has several options for filing a complaint.[1]  Within NYPD, the type of alleged harm and its seriousness will determine which NYPD unit will investigate the complaint, decide whether the allegation is credible, and take appropriate action.

In its complaint intake function, NYPD's Internal Affairs Bureau (IAB) categorizes the allegations made in public complaints according to their seriousness.  IAB refers less severe allegations to command-based investigators within NYPD.  The Department refers to this less severe group of complaints against officers as "Outside Guidelines" (OG) cases because, if proven, the behavior falls outside NYPD's own Patrol Guide rules.  Examples of OG cases include: contested summonses, disputed arrests, or refusal by an officer to provide his or her name and badge number.  According to IAB personnel, OG cases account for approximately 50% of the tens of thousands of complaints from members of the public and other sources that IAB registers each year.  In 2015, NYPD handled 26,133 OG cases.

OIG-NYPD has received complaints and fielded inquiries from members of the public expressing frustration that NYPD cannot provide an update on the status of their complaints against police officers.  This is a concern because it impedes NYPD's accountability to the public, handicaps its ability to respond to public needs and concerns, and has the potential to erode public confidence that NYPD is investigating and addressing complaints in an efficient and effective manner.[2]  Accordingly, OIG-NYPD investigated how NYPD tracks OG cases as they move

---

[*] NYC Department of Investigation Commissioner Mark G. Peters and Inspector General for the NYPD Philip K. Eure thank the staff of OIG-NYPD for their efforts, persistence, and insight in helping to produce this Report, especially Sandra Musumeci, Deputy Inspector General; Asim Rehman, General Counsel; Candace McCoy, Director of Policy Analysis; Joseph Lipari, Senior Policy Manager; Nicole Napolitano, Senior Policy Manager; Constance Gonzalez-Hood, Senior Investigator; Betty Diop, Policy Analyst; and Michael Acampora, Special Investigator; as well as other current and former staff.  The contributions made by Lesley Brovner, First Deputy Commissioner; Richard Condon, Special Commissioner; and Michael Carroll, Chief of Investigation; are also appreciated.  Our gratitude is also extended to the New York City Police Department for their cooperation during the preparation of this Report.

[1] NYPD's Internal Affairs Bureau (IAB) is responsible for investigating allegations of corruption and other serious misconduct committed by police officers.  The independent Civilian Complaint Review Board (CCRB) investigates complaints of excessive force, abuse of power, discourtesy and offensive language.  Additionally, the Department of Investigation's Office of the Inspector General for the NYPD (OIG-NYPD) accepts complaints regarding problems and deficiencies relating to NYPD's operations, policies, practices, and programs.

[2] OIG-NYPD's January 2015 report, *Observations on Accountability and Transparency in Ten Chokehold Cases*, ("2015 Chokehold Report"), identified "an informality and inconsistency" with OG investigations that were performed in conjunction with the ten reviewed chokehold cases. The inconsistencies identified in the 2015 Chokehold Report related to when the investigations were performed, their scope, and how results were tracked.  More specifically, OIG-NYPD found that neither IAB nor OCD consistently tracked or coordinated these OG investigations to ensure that they were handled in a timely fashion.

from IAB to the Office of the Chief of Department's Investigation Review Section (OCD IRS), to various commands, and back.

### III.   Methodology

To determine the scope of the problem, OIG-NYPD requested and received information about how many "Outside Guidelines" (OG) cases NYPD processes annually and which commands manage the bulk of these complaints. OIG-NYPD analyzed NYPD data regarding the number of OG cases sent to each of the patrol boroughs and other commands. There were 26,133 cases referred from IAB to the OG process in 2015. Of these cases, 14,847 were generated externally by members of the public ("externally-generated"), while 5,731 were generated from within the Department ("internally-generated"). NYPD was unable to confirm the origin of the remaining 4,933 cases due to the shortcomings of its current tracking system. **Figure 1** identifies the origin of the cases designated as Internal, External, or Unclear.

FIGURE 1



The path that an OG case takes can differ between commands depending on the structure and organization of each command. For example, some NYPD bureaus (such as Personnel and Information Technology) do not send their OG cases to a borough or local command. However, the majority of OG cases are routed through the Patrol Bureau to borough commands and then

2

to local precincts.  In order to get a deeper understanding of the OG process, OIG-NYPD investigators examined the patrol boroughs where complaints were most numerous.  **Figure 2** depicts the volume of cases by the patrol borough in which the complaints originated.

**FIGURE 2**



The four patrol boroughs with the most OG case referrals in 2015 were the Bronx, Brooklyn North, Brooklyn South, and Queens South.  OIG-NYPD conducted interviews with commanding officers and lieutenants in these patrol boroughs to learn more about command-level practices in handling OG cases.  During those meetings, patrol borough leaders explained the logistics for handling OG cases in their patrol boroughs, identified inefficiencies within the current process, and offered suggestions about how to improve and streamline the system based on their own experiences.  **Figure 3** depicts the four patrol boroughs where OIG-NYPD interviewed NYPD staff about their OG procedures.

ADDRESSING INEFFICIENCIES IN NYPD's HANDLING OF COMPLAINTS:
AN INVESTIGATION OF THE "OUTSIDE GUIDELINES" COMPLAINT PROCESS

FEBRUARY 2017

FIGURE 3



In addition to meeting with borough commanders, OIG-NYPD investigators also met with senior officials in IAB and OCD IRS to understand how OG cases are received, triaged, and referred. OCD IRS staff then conducted "walk-throughs" for OIG-NYPD staff on two separate occasions; these were demonstrations of OCD IRS's intake and data management process. Additionally, OIG-NYPD met with members of NYPD's Information Technology Bureau (ITB) to discuss the computer systems involved in routing OG cases to local investigative units. OIG-NYPD also reviewed NYPD documents concerning policies, protocols, and training on the referral, processing, and investigation of OG cases.

4

### IV.    The Process of Handling OG Cases

The process by which NYPD logs, investigates, records, and reports OG cases begins when either a member of the public or someone within NYPD complains about the actions of an NYPD officer or non-uniformed employee.  Upon determining that a complaint is an OG case, IAB assigns a log number to the case and forwards it to the OCD's Investigation Review Section (OCD IRS) using a computer program known as Internal Case Information System (ICIS) Referral.[3]  Once OCD IRS receives the case through ICIS Referral, a small team of officers is responsible for transcribing the details of the case into a different computer program known as Computer Aided Tracking System (BCATS).  BCATS is a computer system unique to OCD IRS designed to catalog OG cases and other cases classified as "Misconduct."[4]

OCD IRS then begins the process of funneling the case to the local unit or command where the officer or employee who is the subject of the OG complaint is assigned or where the alleged incident occurred.  First, using ICIS Referral, OCD IRS sends the case to the appropriate bureau where the NYPD officer or employee is assigned.  **Figure 4** indicates the distribution of OG cases by bureau.

---

[3] IAB classifies each complaint it receives as either Corruption (C), Misconduct (M), or Outside Guidelines (OG).  IAB retains all C cases for investigation while most M cases are sent to investigative units at bureau commands or, if they involve allegations of unnecessary use of force, abuse of authority, discourtesy, or offensive language (FADO), to CCRB.  *See* Patrol Guide Procedure No. 207-31 and Operations Order No. 67.

[4] The letter "B" signifies that BCATS is a second generation version of the Computer Aided Tracking System.

ADDRESSING INEFFICIENCIES IN NYPD'S HANDLING OF COMPLAINTS:
AN INVESTIGATION OF THE "OUTSIDE GUIDELINES" COMPLAINT PROCESS

FEBRUARY 2017

**Figure 4**



From there, the bureau commanders forward the case to the appropriate command through ICIS Referral; the majority of such cases are distributed to the patrol boroughs. An administrative lieutenant at the borough command is then responsible for reviewing the case, determining which local command within the borough should investigate the case, and forwarding a paper copy of the case to the appropriate unit.

At the local command level, another administrative lieutenant logs and reviews the case, assigns a due date for completion of the investigation, and then assigns the case to a supervising

investigator – usually the subject officer's direct supervisor.[5]  Since March 2014, the Department has had in place an OG Disposition and Penalty Form – a paper form – to standardize the investigations process by outlining the steps required to investigate an OG case.[6]  As an initial step, the supervising investigator is required to send the complainant the investigator's contact information by registered mail with a return receipt and keep the case open for at least 10 days after NYPD receives the return receipt.   The supervising investigator must interview the complainant, making at least three separate attempts to contact the complaining party before deeming the complainant unavailable.  The supervising investigator handling an OG case must also interview the subject officer or staff member before closing the investigation.  Supervising investigators then use the OG Disposition and Penalty Form to record the investigative actions taken and to recommend a disposition.

Once the investigation is complete, a captain or someone of higher rank must review, approve, and sign the paper OG Disposition and Penalty Form, and then mail it to the borough command for approval.[7]  The borough executive can decide to mail the case back to the local command for further review if one or more of the investigative steps was not followed.[8]  When the final disposition has been made, the borough command mails the paper form to the appropriate bureau.  The bureau executive then reviews and signs off on the investigation before mailing the case files to OCD IRS, where an OCD IRS officer scans an image of the form into a computer and manually enters the closing information from the form into BCATS.  Although OCD

---

[5] There are both pros and cons to assigning a subject officer's direct supervisor to an internal investigation.  On one hand, the subject officer's immediate supervisor would likely know the officer's recent personnel history and other factors that could be relevant to the investigation.  On the other hand, if the investigating supervisor has a personal relationship with the subject officer, there is a danger that the supervisor could demonstrate bias one way or another in conducting the investigation.  While the assignment of an impartial investigator to internal investigations should be a fundamental concern of all law enforcement agencies, that specific question is outside the scope of this Report.
[6] See Appendix 1, Disposition and Penalty Form – Outside Guideline Communications, revised June 2016.  OCD IRS staff reported that prior to the introduction of the OG Disposition and Penalty Form in March 2014, OG investigations were memorialized on different forms with little uniformity.  For the past three years, however, OCD IRS supervisors have taught the OCD IRS process, including the OG Disposition and Penalty Form, to new supervisors in NYPD's Basic Management Operations Course (BMOC).  OCD IRS staff reported that this form and the associated training have brought greater uniformity to OG investigations.
[7] In June 2016, NYPD revised the OG Disposition and Penalty Form and reduced the number of supervisors required to review the investigation and sign the form.  Prior to June 2016, command, borough, and bureau approval were all required.  After the June 2016 revision, only one additional level of approval is required after the command level.  OIG-NYPD's review of OG cases found that a significant delay in approving OG investigations routinely occurred between the borough and bureau levels.  Therefore, the reduction of required reviewers and signatures in the final stages of the process should result in a more efficient process.  OIG-NYPD will continue to monitor the review and approval of OG investigations to assess the impact of the reduction of supervisory reviewers on accountability and the quality of investigations.
[8] Upon receipt of the completed investigation, OCD IRS reviews the case to ensure that the investigating supervisor took all necessary investigative steps.  If OCD IRS identifies any investigative steps that were not taken, OCD IRS sends a Corrective Action Letter to the investigating supervisor instructing the supervisor to take the necessary steps and provide the requested information to OCD IRS.

IRS reported that their office expects to receive the completed investigations within 90 days of their referral to the borough commands, this does not appear to be a hard deadline.

**Figure 5** details how OG cases cycle through the various commands, illustrating several process inefficiencies that delay the investigation and closing of OG cases.



**OUTSIDE GUIDELINES CASE PROCESSING**

**IAB**

OG complaints can be filed in a variety of ways, including: directly with NYPD's Internal Affairs Bureau, with the Civilian Complaint Review Board (CCRB), with OIG-NYPD, or through the City's 311 service. OG complaints received by non-IAB entities are referred to IAB.

**CHIEF OF DEPARTMENT**

The Office of the Chief of Department's Investigation Review Section (OCD IRS) receives OG cases from IAB through ICIS Referral and manually logs complaint data into the BCATS system.

**BUREAUS** (PATROL, TRAFFIC, HOUSING, TRANSIT, ETC.)

Bureau Administrative Lieutenants receive complaint data from ICIS and send the cases to their respective borough commands, when applicable, electronically through the ICIS Referral system.

**BOROUGH COMMANDS**

For Bureaus with borough commands, borough Administrative Lieutenants receive cases from ICIS Referral and assign them to a supervising investigator or to the relevant local command for investigation.

PATROL, TRANSIT, HOUSING, TRAFFIC, DETECTIVE, & SCHOOL SAFETY

**LOCAL COMMANDS**

Cases from the Patrol, Transit, Housing, Traffic, Detective, and School Safety Bureaus are received and reviewed by local commands such as precincts. They are assigned by the Commanding Officer to a supervising investigator. Investigations must be documented on paper forms, approved by the Commanding Officer, and then sent back to the borough command for review.

OTHER BUREAUS

**CHIEF OF DEPARTMENT**

OCD IRS reviews all completed case investigations received from the borough commands. Once a case is approved, OCD IRS personnel must manually enter the case disposition into the computer system and scan the case file in order to close the investigation.

**BUREAUS** (PATROL, TRAFFIC, HOUSING, TRANSIT, ETC.)

Bureau Executives review the investigation, sign off on the approval, and mail the paperwork to the Chief of Department.

**BOROUGH COMMANDS**

Borough Executives review each investigation. If the case has been thoroughly investigated, the Executive staff approves the case, signs off on the approval, and mails the paperwork to the appropriate Bureau for final review. Otherwise, the case is returned to the supervising investigator for additional investigation.

FIGURE 5

## V.    Key Findings

### A.  Process Inefficiencies

While examining the lifecycle of OG cases, OIG-NYPD identified a number of process inefficiencies. According to OCD IRS personnel, OCD IRS regularly faces several weeks of backlog due to a massive paper trail, manual data entry, and the mailing of paper forms to local-level supervising investigators. OCD IRS's use of a paper form (the OG Disposition and Penalty Form) creates a burden on the process. The sworn and non-sworn staff at OCD IRS are continuously processing paperwork for the large number of OG cases received each year, causing a lag in closing investigations. This process also creates a significant potential for error because of the sheer volume of paperwork that OCD IRS's small staff must handle.

Further, OCD IRS cannot easily check the status or disposition of a case if it has not yet been manually entered into its computer system or has already been forwarded to another unit for investigation. Officials at OCD IRS, who were open and helpful in discussing this system with OIG-NYPD, reported that complainants often become frustrated when they contact OCD IRS and cannot promptly learn the status of their cases.

Additionally, OCD IRS personnel acknowledged that extended delays between the filing of the complaint and the initial contact by the supervising investigator – delays in some cases caused by manual entry of data and the mailing of paper case files to local commands – can result in complainants losing interest in the case or becoming unwilling to speak to investigators. Overall, such delays can accumulate, resulting in an appearance of non-responsiveness to complainants' concerns.

Relatedly, the duration of OG investigations can vary, despite OCD IRS's expectation that OG investigations should be completed and returned to OCD IRS within 90 days of their referral to the borough commands. OIG-NYPD examined how long it took for a subset of OG cases to reach final disposition and found that the average number of days to closure of these files was 170 – nearly double the 90-day period. Average "case duration" was calculated by comparing the date that the OG complaint file was first opened with the date that the reviewing supervisor signed and approved the investigation, using a group of 34 such cases. Of the 34 cases, 27 (about 80%) had been open for over 90 days.[9]

---

[9] This group of 34 cases is not a representative sample of the OCD IRS caseload. It is too small to make statistical inferences of representativeness, and it was chosen using keywords for complaints of a particular type. Despite these data limitations, the analysis raises serious questions about the timeliness of OG investigations because the average number of days above the expected ninety is high.

### B. Incompatible and Outdated Electronic Systems

OIG-NYPD found that inefficiencies in processing OG cases are partially attributable to outmoded and underperforming technological systems. NYPD currently uses multiple incompatible computer programs to log, distribute, review, and store OG case information. ICIS is the Department-wide case management system that allows NYPD to track and manage non-OG complaints. ICIS Referral, which OCD IRS uses to transfer OG cases between OCD IRS and the borough commands, is a limited version of the larger ICIS system which only shares certain information regarding OG cases.

Finally, OCD IRS employs BCATS, a second-generation version of the Department's older Computer Aided Tracking System, to catalog and close out each OG complaint. BCATS is not a comprehensive case management system as it lacks the ability to run analytics, generate reports, and, most importantly, retrieve and store information from ICIS Referral. Thus, OCD IRS officers must resort to entering data from ICIS Referral into BCATS manually, a tedious and lengthy practice that delays the processing and assignment of OG cases.

Moreover, BCATS cannot be used to track investigations in real time. Thus, the current method of referring, investigating, reviewing, and closing OG cases is delayed by these systems, and the substantial amount of paperwork that OCD IRS staff must review and manually enter into a computer slows the process further.

Modern case management systems provide a variety of benefits that streamline and expedite case processing, allowing staff to focus on more critical tasks. Such systems employ electronic forms and signatures which do not have to be physically mailed between locations, electronic notifications to remind command staff to complete investigations and submit their findings, and electronic logs to document investigative actions taken. If an OG case record were made available electronically to the appropriate supervising investigator, rather than being mailed as paper records, and if the supervisor's investigative results were recorded electronically in a unified computer system, case dispositions could be returned to the borough commands immediately with a simple electronic notification. In turn, the borough commands would be able to review and approve case dispositions electronically or immediately return them to the supervising investigator for further investigation. Once an OG investigation is satisfactorily completed, the borough commands could readily notify OCD IRS of the case's availability for final review, and OCD IRS staff would not have to scan the form and then manually enter the final case disposition into its computer system.

A fully integrated, electronic tracking and distribution process would greatly improve the efficiency of case assignment, investigation, and disposition, thus benefiting members of the public who initiated the complaints, the NYPD officers and employees who are the subject of such complaints that linger, and the Department staff who process and investigate the complaints. Furthermore, software for modern case management systems can also generate data analytics and summary statistics which NYPD and external stakeholders can examine to

identify trends or patterns in complaint intake and processing. Currently, there are no NYPD reports on OG cases available to the public.

### C. Inconsistent Due Date and Record Keeping Protocols

OIG-NYPD found several inconsistencies in command-level due dates for completing OG investigations, as well as varying methods of keeping track of cases across commands. Each patrol borough OIG-NYPD interviewed reported different lengths of time permitted for OG investigations once the case had been received at the precinct. The earliest mandated command-level due date among the patrol boroughs examined was 14 days after the case was received, while the longest timeframe was 30 days after the case was assigned to the precinct. In fact, NYPD's OG Disposition and Penalty Form does not contain a designated space for a due date, nor is there a designated space to indicate the completion dates for each stage of the investigation. The lack of clear and consistent due dates reflects a larger problem of informality and inconsistency in processing OG cases in a timely manner.

Additionally, each command uses different mechanisms for tracking OG cases. Some use a spreadsheet, while others record due dates in a handwritten logbook. Inconsistent due dates and recording methods impede the efficient tracking of OG cases across commands and require investigators to learn a new tracking and recording system each time they relocate to a different command.

### D. Funding Available for Necessary Upgrade

According to NYPD's Information Technology Bureau (ITB), NYPD has secured funding of approximately $450,000 to develop an upgrade to OCD IRS's current case management system and make it compatible with the larger Department-wide system known as ICIS. This upgrade, which OCD IRS staff have been requesting of NYPD for several years, would provide OCD IRS with analytic capabilities and ICIS integration. In March 2016, officials from ITB indicated that the Department had signed a contract with a company called Information Builders to begin the upgrade by Fall 2016; however, ITB also noted that the upgrade was not a high priority relative to other technological improvements for the Department. OIG-NYPD reviewed this contract, finding that NYPD has contracted with Information Builders to upgrade a wide variety of its information technology systems, for a total of $62 million. The contract to upgrade the OCD IRS system is bundled together with other critical NYPD contracts signed with Information Builders.

In August 2016, an official from ITB confirmed that the Department's plans to upgrade the system had indeed been delayed and that no date had been established to carry out the

improvement.   According to NYPD, the Department made the decision to prioritize other contracts over the replacement of BCATS.[10]

In January 2017, shortly before the release of this Report, NYPD informed OIG-NYPD that the work on the BCATS replacement would begin during early February 2017.[11] NYPD's decision to move forward on the BCATS replacement is critically important, as the absence of a modern, comprehensive system has led to significant inefficiencies managing and tracking OG cases, resulting in a potential lack of accountability to the public and an overreliance on Department staff to enter data manually rather than working on more immediate policing or administrative duties.

---

[10] OIG-NYPD recognizes that NYPD must set priorities for projects; this investigation did not review the other competing priorities and therefore offers no comment on that decision.
[11] Notably, NYPD has not yet produced a work order authorizing Information Builders to begin service on the BCATS replacement, reporting that the work order is under review by various NYPD units.  However, NYPD has indicated that work will nevertheless proceed in February 2017, as the work is part of a larger contract with previously-approved funding.

## VI.    Recommendations

Based on these findings, OIG-NYPD recommends the following:

1. **NYPD should update and unify the computer systems it uses to track and manage OG cases by upgrading OCD IRS from BCATS to ICIS (or an ICIS - compatible system).** Along with developing advanced analytics capabilities and ICIS integration, NYPD should consider other features that would streamline the OG process, such as using electronic forms and signatures, employing electronic notifications to remind borough and local command staff to complete investigations and submit their findings, and maintaining electronic logs to document investigative actions taken. (As noted, NYPD has recently indicated that an upgrade of the BCATS system will begin in early February 2017.)

2. **NYPD should establish a uniform timeframe for completing OG investigations and a uniform system of tracking due dates.** Setting standard deadlines would benefit both subject officers/staff and the public by bringing greater clarity and predictability to the timeframe in which the complaint investigation process should be completed.

3. **If an OG investigation has not been completed within 90 days, the assigned supervising investigator should be required to request an extension from OCD IRS in writing, stating the reason for this request.** OCD IRS should hold supervising investigators accountable for the timely completion of an investigation. Placing the request for an extension in writing will allow supervising investigators to document a reasonable justification for the delay or allow OCD IRS staff to identify the cause of any unnecessary delays.

4. **NYPD should revise the current OG Disposition and Penalty Form to include a box denoting the case's due date as well as a date section for each stage of the investigation.** Clearly recording and tracking due dates at all stages of the OG process would allow command staff to monitor the timeliness of OG investigations and ensure that each case is completed in a reasonable amount of time.

5. **NYPD should implement a web-based procedure for communicating the status and results of externally-generated OG investigations back to the community members who filed the complaints.** Currently, if a case is investigated by IAB or diverted to the precincts as an OG case, complainants have no ability to check the status of their complaint online. In contrast, a complainant can enter a complaint number online to track the status of a case being investigated by CCRB. NYPD should implement a mechanism similar to the one currently employed by CCRB on its website.

6. **NYPD should publish quarterly reports on OG complaints.** NYPD already publishes monthly complaint comparison reports for all Corruption and Misconduct cases. Once a

14

new computer system is in place to facilitate the efficient tracking and analysis of OG cases, NYPD will have the capacity to accurately report the number, type, disposition, geographic distribution, demographic characteristics, investigative duration and other trends concerning OG cases. This information should be published on a quarterly basis so that policy-makers and the public have the ability to make accurate and informed assessments of the OG investigative process.

Making these improvements to the OG case processing and tracking system would improve Departmental efficiency and demonstrate responsiveness to public concerns, regardless of the severity of the alleged infractions.

*Please contact us at*:

**Office of the Inspector General for the New York City Police Department**
New York City Department of Investigation
80 Maiden Lane
New York, NY 10038
Telephone: (212) 806-5200
www.nyc.gov/oignypd

For general inquiries, please email inquiry@oignypd.nyc.gov

For OIG-NYPD's Press Office, please call (212) 806-5225 or email press@oignypd.nyc.gov

For OIG-NYPD's Outreach Unit, please call (212) 806-5200 or email outreach@oignypd.nyc.gov

ADDRESSING INEFFICIENCIES IN NYPD'S HANDLING OF COMPLAINTS:                    FEBRUARY 2017
AN INVESTIGATION OF THE "OUTSIDE GUIDELINES" COMPLAINT PROCESS

### Appendix 1: NYPD Disposition & Penalty Form, Outside Guidelines Communications

**DISPOSITION & PENALTY FORM**
**OUTSIDE GUIDELINE COMMUNICATIONS**
Rev A. June 2016

NOTE: This form MUST BE used to document investigations of all OG Communications. Completed form must be endorsed by a CAPTAIN or above.

A COPY OF THE ORIGINAL LOG (IAB, CCRB, 311, etc.) MUST BE ATTACHED TO THIS FORM.
This is a two (2) page document.

**A** OFFICIAL COMMUNICATION NUMBERS: *Must list all relevant numbers.*

| IAB # | OCD # | 311# | P.C. / P.C.M. # | Borough # | Command # |
|---|---|---|---|---|---|

List All Associated Comm. #'s:

**B** SUBJECT #1 MOS INFORMATION:

| Rank/Title: | Last Name | | First Name: |
|---|---|---|---|
| Tax No.: | Shield No.: | Command: | Assignment: |

Allegation:

Disposition For This Allegation: MUST CHECK ONE
☐ Substantiated  ☐ Partially Substantiated  ☐ Unsubstantiated
☐ Exonerated  ☐ Unfounded  ☐ Minor Procedural Violation  ☐ Information and Intelligence (Used only with accompanying allegations)

Penalty For This Allegation: MUST CHECK ONE
☐ Charges & Specs  ☐ Letter of Referral  ☐ Letter of Instruction  ☐ No Discipline
☐ Command Discipline C.D. #: ___  Schedule: ☐ "A"  ☐ "B"

**C** SUBJECT #2 MOS INFORMATION:

| Rank/Title: | Last Name | | First Name: |
|---|---|---|---|
| Tax No.: | Shield No.: | Command: | Assignment: |

Allegation:

Disposition For This Allegation: MUST CHECK ONE
☐ Substantiated  ☐ Partially Substantiated  ☐ Unsubstantiated
☐ Exonerated  ☐ Unfounded  ☐ Minor Procedural Violation  ☐ Information and Intelligence (Used only with accompanying allegations)

Penalty For This Allegation: MUST CHECK ONE
☐ Charges & Specs  ☐ Letter of Referral  ☐ Letter of Instruction  ☐ No Discipline
☐ Command Discipline C.D. #: ___  Schedule: ☐ "A"  ☐ "B"

**D** SUMMARY OF INVESTIGATION:
Interview of Complainant / Witness(es): At least 3 attempts on 3 diff. days must be made with subs/times documented. Attach copy of registered letters and or emails sent. Allow 1 week for response.

| Attempt #1 via : ☐ Phone  ☐ Email  ☐ Visit | Attempt #2 via : ☐ Phone  ☐ Email  ☐ Visit | Attempt #3 via: ☐ Phone  ☐ Email  ☐ Visit |
|---|---|---|
| Date:          Time: | Date:          Time: | Date:          Time: |

PD records Reviewed/Prepared: List all UF61, Summons, Arrest, etc. #'s reviewed and/or prepared.

Observations Made:

16

O.G. Disposition & Penalty Form - Page 2

| OFFICIAL COMMUNICATION NUMBERS: | | | | | |
|---|---|---|---|---|---|
| IAB # | OCD # | [illegible] | [illegible] | Borough # | Command # |
| | | | | | |

Interview of MOS: Date: Time:

Conclusion: 1

Subsequent Interview of Complainant: 2 Date: Time:

**INVESTIGATING SUPERVISOR INFORMATION:**

| 3 Rank: | Last Name: | First Name: | Tax Number: | Command: |
|---|---|---|---|---|
| Investigating Supervisor Signature: | | | | Date: |

**ENDORSEMENTS:**

| | | | | |
|---|---|---|---|---|
| Command Level Approval (Capt.+): | Date: | Rank: | Name: | Signature: |
| 4 Overhead Command Approval (Capt.+): | Date: | Rank: | Name: | Signature: |

Go to page one