UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

JASMINE BRIDGEFORTH, DELANO BROADUS, AND
DAVID FAIRFAX,

            Plaintiffs,    16 Civ. 273 (WHP) (SDA)

       -against-

THE CITY OF NEW YORK, NYPD Officer JOHN
ZERAFA, Tax No. 919893, individually, NYPD Officer
RAFAEL SANCHEZ, Shield No. 12327, individually,
NYPD Officer MOHAMMED KHANG, Shield No. 18729,
individually, NYPD Sergeant DEMETRIOUS LEE,
individually, NYPD Deputy Inspector LUIS DESPAIGNE,
individually, and JOHN/JANE DOE POLICE OFFICERS
1-5, individually,

            Defendants.

-------------------------------------------------------------------------x

### REPLY MEMORANDUM OF LAW
### IN FURTHER SUPPORT OF DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

        ZACHARY W. CARTER
        Corporation Counsel of the City of New York
        *Attorney for Defendants City, Zerafa, Sanchez,*
        *Khan, Lee, and Despaigne*

            /s/

By:   _____

        Elizabeth Bardauskis
        *Assistant Corporation Counsel*
        Special Federal Litigation Division
        100 Church Street, Room 3-181
        New York, New York 10007
        (212) 356-3159

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

POINT I

      PLAINTIFFS' 56.1 STATEMENT AND SUPPLEMENTAL STATEMENT OF FACTS SHOULD BE DISREGARDED .................................................. 1

POINT II

      PLAINTIFFS' ARRESTS WERE SUPPORTED BY PROBABLE CAUSE ............................................................. 4

POINT III

      PLAINTIFFS' CLAIM FOR EXCESSIVE DETENTION MUST BE DENIED ........................................... 7

POINT IV

      PLAINTIFFS' DENIAL OF A FAIR RIGHT TO TRIAL CLAIM FAILS AS A MATTER OF LAW ................................... 9

POINT V

      PLAINTIFFS' FAILURE TO INTERVENE CLAIM CANNOT SURVIVE .................................................. 10

POINT VI

      DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ....................................................... 11

POINT VII

      PLAINTIFFS' MUNICIPAL LIABILTY CLAIM MUST BE DENIED ............................................................ 11

CONCLUSION ............................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**                                                                                         **Pages**

Ali v. City of N.Y.,
    11-cv-5469 (LAK), 2012 U.S. Dist. LEXIS 126233 (S.D.N.Y. Sept. 5, 2012) ........................4

Amnesty Am. V. Town of W. Hartford,
    361 F. 3d 113 (2d Cir. 2004)...................................................................................................11

Ashley v. City of New York,
    14-cv-5559 (NGG) (SMG), 2017 U.S. Dist. LEXIS 107980
    (E.D.N.Y. Jul. 7, 2017) .........................................................................................................9

Bryant v. City of New York,
    404 F.3d 128 (2d Cir. 2005)....................................................................................................7

Cifarelli v. Village of Babylon,
    93 F.3d 47 (2d Cir. 1996)........................................................................................................2

County of Riverside v. McLaughlin,
    500 U.S. 44 (1991)..............................................................................................................7, 8

Curley v. Vill. of Suffern,
    268 F.3d 65 (2d Cir. 2001)......................................................................................................6

Edwards v. City of New York,
    03-cv-9407 (PAC), 2005 U.S. Dist. LEXIS34376, (S.D.N.Y. Dec. 19, 2005).........................7

Enzo Biochem, Inc. v. Amersham PLC,
    981 F. Supp. 2d 217 (S.D.N.Y. 2013)......................................................................................7

Epstein v. Kemper Ins. Cos.,
    210 F. Supp. 2d 308 (S.D.N.Y. 2002)......................................................................................2

Gerstein v. Pugh,
    420 U.S. 103 (1975)................................................................................................................7

Giannullo v. City of New York,
    322 F.3d 139 (2d Cir. 2003)....................................................................................................2

Goldstick v. Hartford, Inc.,
    00-cv-577 (LAK), 2002 U.S. Dist. LEXIS 15247 (S.D.N.Y. Aug. 19, 2002)...........................2

Green v. City of New York,
    465 F.3d 65 (2d Cir. 2006)....................................................................................................11

Greenfield v. City of New York,
    99-cv-2330 (AJP), 2000 U.S. Dist. LEXIS 1164, (S.D.N.Y. Feb. 3, 2000) ............................7

**Cases**                                                                                              **Pages**

Headley v. Fisher,
  06-cv-6331 (PAC) (KNF), 2010 U.S. Dist. LEXIS 34917
  (S.D.N.Y. Apr. 7, 2010)........................................................................................................2

Krause v. Bennett,
  887 F.2d 362 (2d Cir. 1989)..............................................................................................5

Marom v. City of New York,
  15-cv-2017 (PKC), 2016 U.S. Dist. LEXIS 28466 (S.D.N.Y. Mar. 7, 2016) .....................8, 10

McLennon v. Vorraro,
  13-cv-0128 (KAM) (SMG), 2015 U.S. Dist. LEXIS 42920
  (E.D.N.Y. Mar. 31, 2015) ..................................................................................................9

Owens v. Okure,
  488 U.S. 235 (1989)............................................................................................................7

Reynolds v. Giuliani,
  506 F.3d (2d Cir. 2007).....................................................................................................12

Ricciuti v. N.Y.C. Transit Auth.,
  124 F.3d 123 (2d Cir. 1997)..............................................................................................10

Smith v. City of New York,
  388 F. Supp. 2d 179 (S.D.N.Y. 2005)................................................................................5

Walker v. City of New York,
  14-cv-808 (ER), 2015 U.S. Dist. LEXIS 91410 (S.D.N.Y. July 14, 2015).............................12

Wieder v. City of New York,
  569 F. App'x 28 (2d Cir. 2014) ..........................................................................................4

| **Statutes** | **Pages** |
|---|---|

| | |
|---|---|
| Local Civil Rule 56.1 | 1, 2, 3, 4 |
| Local Civil Rule 56.1(b) | 2 |
| Local Civil Rule 56.1(c) | 4 |
| § 1983 | 9 |
| Soc. Serv. Law §372 | 11 |
| Soc. Serv. Law §422 | 11 |
| State Family Court Act, §166 | 11 |

Defendants City of New York, Detective John Zerafa, Police Officer Rafael Sanchez, Police Officer Mohammed Khan, Sergeant Demetrios Lee, and former Deputy Inspector Luis Despaigne (hereinafter "Defendants"), by their attorney, Zachary W. Carter, Corporation Counsel of the City of New York, respectfully submit this reply memorandum of law in further support of their motion for summary judgment. For the reasons set forth below, the arguments raised by Plaintiffs in their opposition are insufficient to survive Defendants' motion. Accordingly, Defendants respectfully request that the Court grant their motion in its entirety.[1]

## POINT I

### PLAINTIFFS' 56.1 STATEMENT AND SUPPLEMENTAL STATEMENT OF FACTS SHOULD BE DISREGARDED

On March 3, 2018, Plaintiffs filed their opposition to Defendants' motion for summary judgment, which included a purported Local Rule 56.1 Statement in Support of Plaintiffs' Opposition to Defendants' Summary Judgment Motion (hereinafter "Pl. 56.1), as well as "Plaintiffs' Supplemental Statement of Facts" (hereinafter "PSSOF"). See Civil Docket Report, at Document No. 100. For the reasons set forth herein, Defendants move to strike such portions of Plaintiffs' Rule 56.1 Statement, as well as their "Supplemental Statement of Facts" that either are not responsive to the material facts set forth by Defendants, contain argument or mischaracterize the record, and/or do not set forth additional facts that are material to the resolution of Defendants' summary judgment motion, and thus, violate Local Civil Rule 56.1.

"The papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of

---

[1] To the extent Defendants do not specifically address any argument set forth in Plaintiffs' opposition papers, they rest on the arguments set forth in their original moving papers, dated December 22, 2017.

the moving party, and if necessary, *additional paragraphs* containing a *separate short* and *concise* statement of additional *material* facts as to which it is contended there exists a genuine issue to be tried." Local Civil Rule 56.1(b) (emphasis added). Courts have interpreted Local Rule 56.1 to provide that where the non-movant fails to properly respond to the facts set forth in the movant's Rule 56.1 statement, those facts may be deemed admitted by the Court insofar as they are supported by citations to admissible evidence. Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); see also, Headley v. Fisher, 06-cv-6331 (PAC) (KNF), 2010 U.S. Dist. LEXIS 34917, at *14-16 (S.D.N.Y. Apr. 7, 2010). Furthermore, it is inappropriate to include conclusory or argumentative statements in a Rule 56.1 statement. Cifarelli v. Village of Babylon, 93 F.3d 47, 51 (2d Cir. 1996) ("mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment"); see also Epstein v. Kemper Ins. Cos., 210 F. Supp. 2d 308, 314 (S.D.N.Y. 2002) (citations omitted); Goldstick v. Hartford, Inc., 00-cv-577 (LAK), 2002 U.S. Dist. LEXIS 15247, at *3 (S.D.N.Y. Aug. 19, 2002). Plaintiffs' 72-page-long 56.1 Statement and Supplemental Statement of Facts – which is more than five times the length of Defendants' 14-page Rule 56.1 Statement – is in contravention of these basic rules and, accordingly, is improper.

First, Plaintiffs fail to properly address the statements of undisputed facts set forth in Defendants' 56.1. Statement. Plaintiffs admit many of the undisputed facts contained in Defendants' 56.1 Statement, but then add additional facts under the guise of "material clarification" and "necessary clarification" or deny a fact "is material and undisputed when considered in isolation," and often cite to large portions of their supplemental 56.1 Statements in support of their contentions. See e.g., Pl. 56.1 at ¶¶ 3-6, 10-12, 15, 17, 19. Further, where Plaintiffs attempt to "deny" a particular fact, the evidence cited to by Plaintiffs often does not

- 2 -

support their contention. Id. Plaintiffs' failure to simply admit that a fact is undisputed and/or to cite to admissible evidence that actually supports their denials is in contravention of Local Civil Rule 56.1, and accordingly, in those instances, Defendants facts should be deemed admitted.[2]

Second, Plaintiffs' 56.1 does not include separate additional paragraphs containing *short* and *concise* statements of *material* facts. Plaintiffs include a Supplemental Statement of Facts, which is comprised of numerous lengthy "facts" strung together, making it extraordinarily difficult for Defendants to respond. See e.g., PSSOF, at pp. 30-31, ¶60- 62; pp. 37, ¶90-91; pp.39-40, ¶100-101; p.47, ¶136; pp.56-59, ¶¶ 177-187; and pp. 21-23, ¶36. Moreover, the vast majority of the purported additional facts set forth are immaterial to the resolution of Defendants' motion. For example, Plaintiffs include paragraphs pertaining to what they ate for dinner on the night preceding their arrests (Pls. 56.1, at ¶¶62, 137, 208), alleged statements and testimony given during an unrelated child neglect investigation/family court proceeding (Pls. 56.1, at ¶¶120, 121, 195-197, 199-211), a disciplinary investigation and criminal trial pertaining to an unrelated matter (Pls. 56.1, at ¶¶228-239), and allegations concerning the New York City Police Department's ("NYPD") document retention practices (Pls. 56.1, at ¶¶217-227). Further, Plaintiffs also improperly include contentious conclusory narratives, arguments, and credibility assessments within their 56.1 Statement and PSSOF.[3]

---

[2] Specifically, with respect to Plaintiffs' 56.1 Statement, at ¶¶59, 62-63, 65-68, 70, 74, 75, 78, 81-82, 84, 87-89, 94-95, 99-103, 119, 122, 125-127, 130-131, 133, 136, 141, 145-154, 157, 162-163, 180-186, 191-192, 195, 197, 203, and 207, Plaintiffs cite to inaccurate testimony and/or inadmissible evidence. With respect to Plaintiffs' 56.1 Statement, at ¶¶3-6, 8, Plaintiffs "deny that [this] fact is material and undisputed when considered in isolation." With respect to Plaintiffs' 56.1 Statement, at ¶¶11-12, 17, 19, 24-26, 28-33, 37-38, 40, 43, 46, 48, and 51, Plaintiffs admit such facts "with material clarification."

[3] Specifically, Defendants respectfully direct the Court to Pls. 56.1, at ¶¶ 8, 10, 17, and 20. See Pls. 56.1, at ¶¶8, 10, 17, 20, 63, 71, 74, 78, 87, 94-95, 97, 107, 109, 117, 119, 126, 128-129, 136-137, 140, 142-153, 155, 157, 160, 162, 175, 191-195,197, 200-201, 203, 206, 209-210, 216-217, 223-225, 234, and 237.

Accordingly, Defendants respectfully contend that Plaintiffs' 56.1 Statement and PSSOF should be disregarded in their entirety as improper and in contravention of Local Rule 56.1, and that the Court should deem all of the material facts set forth in Defendants' 56.1 Statement as admitted, pursuant to Local Civil Rule 56.1(c).   In the alternative, Defendants respectfully request that all non-conforming portions of Plaintiffs' 56.1 Statement be stricken.[4]

## POINT II

### PLAINTIFFS' ARRESTS WERE SUPPORTED BY PROBABLE CAUSE

"[P]robable cause to arrest is not a high standard, and 'requires only the possibility of criminal activity.'" Ali v. City of N.Y., 11-cv-5469 (LAK), 2012 U.S. Dist. LEXIS 126233, at *9 (S.D.N.Y. Sept. 5, 2012) (citation omitted). Sims' 911 call containing complaints of being held against her will, physically assaulted, threatened and forced to dress in provocative clothing for possible prostitution, wherein she identified her captors, coupled with her documented physical injuries, amount to probable cause. See Defs. 56.1, at ¶¶2-4, 6-9. Recognizing that probable cause may properly be established upon the word of a complaining victim,[5] Plaintiffs attempt to defeat probable cause by contending that the defendants should have doubted the victim's veracity since (1) the police did not find any physical evidence corroborating her allegations, (2) the victim provided inconsistent statements and/or the victim's statements were made in retaliation for her discovery of Plaintiffs' Bridgeforth and Broadus' sexual relationship, and (3) the victim was visibly intoxicated at the time that she made

---

[4] Specifically, Plaintiffs' 56.1 Statement at ¶¶52-53, 55-58, 60-66, 71, 75-78, 82, 92-95, 99, 101-102, 106-109, 112-114, 117, 119-121, 123, 126, 128-137, 140-151, 153-154, 156, 158-239 should be stricken for non-conformance to Local Civil Rule 56.1(c).

[5] Wieder v. City of New York, 569 F. App'x 28, 29 (2d Cir. 2014).

- 4 -

statements to defendants Sanchez and Zerafa. However, none of Plaintiffs' allegations defeat the existence of probable cause for their arrests.

First, Plaintiffs accord misplaced weight on the supposed lack of evidence present in the subject apartment in the early hours of October 9, 2015. See, Pls. Opp., at Point III. Physical evidence, or supposed lack thereof, suggesting innocence does not negate probable cause. Smith v. City of New York, 388 F. Supp. 2d 179 (S.D.N.Y. 2005). In Smith, the Court granted defendant's motion for summary judgment on plaintiff's false arrest claim, wherein plaintiff was arrested after a complainant accused him of rape. Id. at 185.  The Court found probable cause to arrest plaintiff based solely on the statements made by the complainant, her identification of her assailant, and description of the alleged incident—despite the fact that a medical examination found no physical evidence of any alleged rape. Id. "Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury." Id. (quoting Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989)). As is the case here, any supposed lack of evidence does not undermine the existence of probable cause, nor does it "prove" that Sims was an incredible witness who should have been disregarded.

Second, Plaintiffs' allegations concerning inaccuracies in the victim's statements to Defendants are rife with wildly conclusory statements that should be disregarded.[6] In any

---

[6] Plaintiffs' opposition is overwhelmingly based upon conclusory statements, e.g., Defendants having "ample reason to find that Sims' complaint did not provide probable cause given the litany of lies they knew she told them, the inconsistencies in her reports which suggested still more lies, and the physical evidence that proved the complaint was untrue," and that "defendants were already aware of many of the facts that a jury could find partially or wholly dissipated probable cause." Pls. Opp., at Point III.  Plaintiffs reach for a theory to attack Sims' credibility, as well as that of defendant officers, by speculating that they never asked Sims to sign a complaint or testify before a magistrate, adding further conjecture by hypothesizing that "this is likely because Sims' obvious and known lies and changing stories made a sworn complaint unappealing and risky for her and Defendants." However, these unsupported, and unsupportable, allegations fall woefully short of disputing the existence of probable cause in the first instance.

event, as an initial matter, Plaintiffs' opposition does not identify any inconsistencies in the complainant's statements to defendants prior to their arrests. In fact, Sims' account remained consistent and detailed as recounted to multiple officers, multiple times, over the course of several hours, and remained consistent without much variation as to what she told the District Attorney. See Defs. 56.1, at ¶¶28-32; Zerafa Dep., Exhibit "I" to the Bardauskis Decl., at 33-34:9-19; Guenther Dep., Exhibit "K" to the Bardauskis Decl., at 7:4-7; 22:6-24; Transcript of the Deposition of Non-Party Caitlin Nolan, taken on May 9, 2017 (hereinafter "Nolan Dep."), annexed to the Bardauskis Declaration as Exhibit "EE," at 19-20:19-11 (ADA Nolan testified that Sims appeared credible to her because, "I know that there was a 911 call from earlier that day and she was saying the same things several hours later that she stated on the 911 call. Her account was very detailed."). Regarding Plaintiffs' assertions concerning the relationship triangle between Sims, Broadus, and Bridgeforth, the record is clear that Defendants were not informed of any pre-existing romantic relationship between Sims and Broadus, nor of any other possible theory of retaliation, *prior* to Plaintiffs' arrests as they posit. Defs. 56.1, at ¶¶24-26.

Third, Plaintiffs' allegations that Sims was intoxicated also does not undermine the police officers' reliance on her complaint, as a victim's alleged "intoxication alone cannot cast doubt on [her] story." Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001). Even being intoxicated, does not preclude someone from being the victim of a crime or reporting same to the police. See, e.g., Curley, 268 F.3d at 70.

In short, Plaintiffs' attempts to call Sims' credibility into question does not negate the reasonableness of the officers relying on her first-hand account of an alleged crime, positive identification of Plaintiffs, and visible injuries, all of which provided probable cause for Plaintiffs' arrests. Accordingly, Plaintiffs' false arrest claim should be denied.

## POINT III

### PLAINTIFFS' CLAIM FOR EXCESSIVE DETENTION MUST BE DENIED

To the extent that Plaintiffs' opposition attempts to raise an excessive detention claim, such claim should be disregarded by the Court because it was never formally pled in the Plaintiffs' complaint. See, generally, Am. Complaint, Exh. C to the Bardauskis Decl. It is well-settled that a plaintiff cannot raise new claims in response to a motion for summary judgment. See, e.g., Enzo Biochem, Inc. v. Amersham PLC, 981 F. Supp. 2d 217, 224 (S.D.N.Y. 2013) ("A plaintiff may not pivot from its stated claims to new ones at the summary judgment stage simply because it inserted a few vague catch-all phrases into its pleadings."). Further, any claim for an excessive detention regarding the October 9, 2014 incident is time-barred, as the three-year statute of limitations expired on October 9, 2017. See Owens v. Okure, 488 U.S. 235 (1989).

Notwithstanding the foregoing, any purported excessive detention claim fails on the merits. Once probable cause is established for an arrest, an officer may retain custody of an individual until his arraignment. Greenfield v. City of New York, 99-cv-2330 (AJP), 2000 U.S. Dist. LEXIS 1164, at *29 (S.D.N.Y. Feb. 3, 2000). The Fourth Amendment requires a prompt judicial determination of probable cause after a warrantless arrest. County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991); Gerstein v. Pugh, 420 U.S. 103, 125 (1975). The Supreme Court has designated 48 hours as the "presumptive outside limit for confinement" prior to a probable cause determination, which occurs at arraignment in New York State. Mclaughlin, 500 U.S. at 56; Bryant v. City of New York, 404 F.3d 128, 138 (2d Cir. 2005).

Plaintiffs' excessive pre-arraignment detention claims fail for two reasons. First, it is undisputed that their pre-arraignment detention did not exceed 48 hours, and thus, was presumptively reasonable. Marom v. City of New York, 15-cv-2017 (PKC), 2016 U.S. Dist.

- 7 -

LEXIS 28466, at *24-25 (S.D.N.Y. Mar. 7, 2016); Pl. 56.1, at ¶169.   Second, the record is devoid of any evidence tending to show that plaintiffs were held prior to arraignment "for the purpose of gathering additional evidence to justify the arrest," or that the delay was "motivated by ill will," or that the delay was for "delay's sake." McLaughlin, supra, at 56.   Plaintiffs' assertion that they were held for the purposes of gathering additional evidence to justify an arrest is belied by their own claims herein.[7] Plaintiffs allege that they were handcuffed, transported to PSA 6, handcuffed at PSA 6, and questioned for hours, based on the claims of Sims. Pls. 56.1, at ¶¶ 121, 129-133; Broadus Dep., Exhibit "G" to the Bardauskis Decl., at 60:15-25; 62-63:2-4; Bridgeforth Dep., Exhibit "F" to the Bardauskis Decl., at 56-60:21-20; 61:1-6 Thus, Plaintiffs were well aware that they were in the custody of the police and not free to leave, and to suggest that their arrests did not occur until the initiation of paperwork is both disingenuous and contrary to law.   Further, as established above, there was ample probable cause to arrest Plaintiffs based upon the allegations of the complaining victim reported prior to Plaintiffs' arrests, and therefore, their contention  that officers continued to investigate in order to establish probable cause is not only pure  conjecture, but erroneous.[8]   Accordingly, any excessive detention claim fails.

---

[7] Plaintiffs do not contend that their confinement was "motivated by ill will" and/or for delay's sake.

[8] To the extent that Plaintiffs attempt to artificially delineate the time Plaintiffs spent in custody pre- versus post-decision to decline to prosecute, defendants again note that Plaintiffs made no such claim in their Amended Complaint. Furthermore, Plaintiffs have not cited any case law setting forth a time period within which an arrestee must be released after a decision not to prosecute has been made.  Finally, at best, any such claim is one for negligence that must be dismissed since Plaintiffs did not fulfill the conditions precedent to bringing a state law claim.  Specifically, at the very least, Plaintiffs did not file a Notice of Claim pertaining to any such negligence claim.

## POINT IV

## PLAINTIFFS' DENIAL OF A RIGHT TO A FAIR TRIAL CLAIM FAILS AS A MATTER OF LAW

Here, Plaintiffs cannot demonstrate that the defendants forwarded fabricated evidence to ADA Nolan.  In fact, there is no evidence that defendants Khan, Lee, or Despaigne even had any contact with the ADA.  Further, as pertaining to Detective Zerafa and the purported evidence that he "omitted" from the search warrant application for Bridgeforth's apartment, Plaintiffs fail to point to an iota of evidence showing that Detective Zerafa was aware of the alleged "omitted" facts at the time he conferred with the District Attorney's Office.  Regarding Police Officer Sanchez, Plaintiffs have not identified any allegedly fabricated evidence that he gave to ADA Nolan.

Nonetheless, even assuming that Plaintiffs could establish that Defendants provided the prosecutor's office with fabricated evidence, Plaintiffs cannot show that they suffered a deprivation of liberty as a result.   A claim for denial of the right to fair trial "requires that the defendant fabricate evidence *that results* in the plaintiff's loss of liberty."  McLennon v. Vorraro, 13-cv-0128 (KAM) (SMG), 2015 U.S. Dist. LEXIS 42920, at *36 (E.D.N.Y. Mar. 31, 2015) (emphasis added); Ashley v. City of New York, 14-cv-5559 (NGG) (SMG), 2017 U.S. Dist. LEXIS 107980, at *18-19 (E.D.N.Y. Jul. 7, 2017) ("a plaintiff who is required to make post-arraignment court appearances suffers a deprivation of liberty cognizable under Section 1983)."  Here, it is undisputed that after being presented with the arrest evidence, the District Attorney's Office declined to prosecute Plaintiffs.  Thus, Plaintiffs' fair trial claim is premised solely on their confinement at PSA 6.  Plaintiffs, however, have not cited a single case that has found that an arrestee's time in custody prior to arraignment, in the absence of a criminal prosecution, establishes a deprivation of liberty for the purposes of a fair trial claim.  To the

contrary, <u>Ricciuti v. N.Y.C. Transit Auth.</u>, appears to preclude such a claim.  124 F.3d 123, 126-130 (2d Cir. 1997) (indicating that a fair trial claim does not attach until at least arraignment). Accordingly, any alleged fair trial claim should be dismissed.

<b>POINT V</b>

<b>PLAINTIFFS' FAILURE TO INTERVENE<br>CLAIM CANNOT SURVIVE</b>

Plaintiffs attempt to keep their failure to intervene claim alive by arguing, in essence, that the claim should go to the jury.[9] Plaintiffs, however, have failed to clarify how the individual defendants failed to intervene, or put forth any evidence that any of the individually-named defendants were either aware that a constitutional violation was occurring or that they had any realistic opportunity to intervene to prevent such a violation. See <u>generally</u>, Defs. MOL, at pp.19-20.  In fact, Plaintiffs concede that they allege that <u>all</u> of the defendants were involved in Plaintiffs' arrest. <u>See</u> Pls. Opp., at Point III, at p. 11. However, a defendant "cannot be liable for both the underlying constitutional deprivation and a failure to intervene to stop themselves from committing that violation." <u>Marom</u>, <i>supra</i>, at *19.  As such, plaintiffs' failure to intervene claim cannot survive.

<b>POINT VI</b>

<b>DEFENDANTS ARE ENTITLED TO<br>QUALIFIED IMMUNITY</b>

Defendants rest on their qualified immunity argument as laid out in their original moving papers.  Nevertheless, insofar as Plaintiffs' opposition alleges malice on the part of all defendants based on purportedly false statements made by Officer Sanchez to the Administration

---

[9] Importantly, Plaintiffs do not point to any concrete evidence supportive of a failure to intervene claim, rather they improperly ask the Court to entertain hypotheticals ("consider the hypothetical scenario"…"perhaps obviously, a hypothetical reality…") about remote possibilities that a jury <i>could</i> find.

of Children's Services ("ACS"), the Court should disregard such allegations.[10] There is no cause of action for any alleged statements made to ACS, and ACS is a non-party to this suit. See, generally, Am. Compl. Accordingly, any purported statements to ACS should not be considered in resolving whether defendants are entitled to qualified immunity.

## POINT VII

### PLAINTIFFS' MUNICIPAL LIABILTY CLAIM MUST BE DENIED

Lacking any particularized evidence to support their municipal liability claim as pled,[11] Plaintiffs instead appear to argue an amorphous failure to train and supervise theory of liability under two theories – a failure to timely release arrestees post-decision to prosecute and the City's deliberate indifference to the "management of its own policies" – neither of which is articulated within the pleadings and which are mainly based upon third-party reports and inadmissible hearsay testimony. See, Am. Compl., at ¶¶76-81. "[A]t the summary judgment stage, plaintiffs must 'identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.'" Green v. City of New York, 465 F.3d 65, 81 (2d Cir. 2006) (quoting Amnesty Am. V. Town of W. Hartford, 361 F.3d 113, 129 (2d Cir. 2004). However, "the fact that training is imperfect or not in the precise form a plaintiff would prefer is

---

[10] By uploading sensitive, confidential ACS documents to a public docket, Plaintiffs have exposed such documents to indiscriminate public inspection, in violation the New York State Family Court Act, §166 ("Privacy of Records"), which states that the records of any proceeding in the family court shall not be open to indiscriminate public inspection. Plaintiffs have also violated the confidential nature of thise type of information protected by Soc. Serv. Law §§372 and 422. Because Plaintiffs did not obtain prior permission from the Family Court to use and/or publish the documents, they should be deemed inadmissible and be disregarded by this Court.

[11] Curiously, there is no development of Plaintiffs' original Monell theories of "productivity goals" and "arrest quotas" within Plaintiffs' opposition, making it even more apparent that Plaintiffs have been unclear, since the commencement of this litigation, as to what theory of Monell they intend to proceed upon. See Am. Compl., at ¶¶47-48, 50, 76-81; Pls. Opp, at pp. 24-25. Instead, Plaintiffs embark on a stream of consciousness and conjecture that have no place in a motion for summary judgment, including ramblings about supposed discovery issues regarding the production of certain disciplinary records, in a last-ditch effort to save a meritless Monell claim.

insufficient to make such a showing" of deliberate indifference. <u>Reynolds v. Giuliani</u>, 506 F.3d, 183, 193 (2d Cir. 2007). Here, besides the fact that Plaintiffs' <u>Monell</u> claims should be dismissed because neither theory was articulated in the Amended Complaint, at the very least, Plaintiffs have not identified any deficiency in the City's training.

First, Plaintiffs allege that defendants, specifically Officer Sanchez, failed to uphold a duty to ensure an arrestee's release following a decision to decline to prosecute. Pls. Opp., at Point VIII. Such argument is unavailing. Plaintiffs have failed to adduce any evidence of the City's training policy/practice as it relates to this purported obligation, much less any evidence of deficiencies in the City's program. <u>Walker v. City of New York</u>, 14-cv-808 (ER), 2015 U.S. Dist. LEXIS 91410, at *31 (S.D.N.Y. July 14, 2015). Plaintiffs also have not adduced any evidence of a lack of training of NYPD officers with respect to such type of release.[12] Nor have Plaintiffs shown a pattern or practice of other arrestees being held for excessive lengths of time after a prosecution is declined. Furthermore, Plaintiffs' reliance on sections of the NYPD Patrol Guide and 30(b)(6) testimony of Lt. Chris Czark (generally discussing the NYPD Online Prisoner Arraignment System ("OLPA")) is misplaced placed since neither shows the need for any additional or improved training in this area.[13] Accordingly, this claim fails.

Second, Plaintiffs allege that the City was deliberately indifferent to its management of its own policies regarding recordkeeping as it relates to disciplinary records.[14]

---

[12] In fact, based upon a review of the deposition transcripts of the named officers, it appears that plaintiffs never questioned any of the defendants about whether they were ever trained in the release of an arrestee following a determination by the District Attorney to decline to prosecute and/or what they were trained to do in such situations.

[13] This portion of Plaintiffs' argument is also overwhelmingly speculative and conclusory in nature, e.g., "jury could find" that the risk of excessive detention was "obvious." <u>See</u> Pl. 56.1, at ¶¶173-174, 177-93.

[14] Plaintiffs ask the Court to issue an adverse inference regarding the disciplinary records to which Plaintiffs refer and which were addressed by way of a court-ordered affidavit on December 22, 2018. Plaintiffs' request, in opposition to a motion for summary judgment, is both inappropriate and premature. Regardless, although Plaintiffs seek an adverse inference, they have failed to provide the Court with any information regarding the defendants'

Notwithstanding the fact that the purported policy of deficient recordkeeping as a basis for Monell liability is alleged nowhere within the Amended Complaint, Plaintiffs also fail to plausibly link their allegation regarding the City's management of its policies to any constitutional deprivation suffered by Plaintiffs. Further, Plaintiffs' cannot base a municipal liability claim on two anecdotal examples of allegedly poorly investigated disciplinary matters,[15] especially where those investigations are dissimilar in nature to the alleged constitutional deprivations suffered by Plaintiffs. Therefore, this Monell claim fails as well.

## CONCLUSION

For the reasons set forth above, and in their original moving papers, Defendants respectfully request that the Court grant their motion for summary judgment in its entirety, dismiss this action with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            March 26, 2018

                             ZACHARY W. CARTER
                             Corporation Counsel of the City of New York
                             *Attorney for Defendants*
                             100 Church Street, Room 3-181
                             New York, New York 10007
                             (212) 356-3159


               By:          _____/s/_____
                             Elizabeth Bardauskis
                             *Assistant Corporation Counsel*

---

unavailable disciplinary files, including such basic information as what the allegations against defendants were, why the allegations and/or investigations are relevant to Plaintiffs' claims, and/or how production of the files would have "aided" Plaintiffs in proving their claims. Further, Plaintiffs cannot establish any willful or reckless destruction of the records which would warrant an adverse inference. As such, the request should be denied.

[15] Edwards v. City of New York, 03-cv-9407 (PAC), 2005 U.S. Dist. LEXIS 34376, at *33 (S.D.N.Y. Dec. 19,2005) (Monell "would be rendered sterile if, as plaintiff asserts, mere conclusory allegations of a few isolated incidents ... were sufficient to hold the municipality liable").

To:    Ryan Lozar, Esq. (via ECF and First-Class Mail)
        *Attorney for Plaintiffs*